Syndic of Barrett *v.* The City of New Orleans.—Widow Valois *v.* SAME.

13    104
105   411

The principles of law respecting the right of batture as settled in the cases of *Kennedy* v. *Municipality No.* 2, 10 An., 54, and *Remy* v. *Municipality No.* 2, re-affirmed.

The alluvion belongs to the owner of the soil situated on the edge of the water whether it be a river or a creek, and whether the same be navigable or not, who is bound to leave public that portion of the bank which is required by law for the public use. C. C. 501.

APPEAL from the Sixth District Court of New Orleans, *Cotton*, J. *Durant & Horner* and *H. B. Eggleston*, for Syndic of *Barrett*. *Janin & Griffon*, for *Mrs. Valois*, plaintiff and appellant. *J. Livingston*, for the City of New Orleans.

VOORHIES, J. The City of New Orleans and the plaintiff, *Eulalie Josephine Virginie Gaiennié*, widow of *Jacques Victor Valois*, are both appellants from a judgment of the court below, rendered against them, in favor of the other plaintiff, as Syndic of the creditors of *Thos. Barrett*, in these two cases, consolidated by consent.

On the 30th of June, 1806, *Urbain Gaiennié* purchased of *Marguerite Foucher*, widow of *Delord Sarpy*, a certain tract or parcel of land, divided into six lots, described as " containing 120 feet front on Tchoupitoulas Street, 120 feet front on New Levee Street, and 360 feet deep from one to the other on Gaiennié Street, together with the right to the alluvion or batture in front thereof." On the 20th of February, 1824, *Urbain Gaiennié* sold to *Constance Vivant*, *f. w. c.*, the one undivided half of this batture, describing it as " bounded by the river, Gaiennié Street, the properties of *Burthe* and *Foucher* and New Levee Street."

The newly formed alluvion or batture extending beyond this, has given rise to the present litigation. The widow *Valois* claims, as one of the heirs of *Urbain Gaiennié*, deceased, the one undivided twelfth, and the Syndic the whole of said batture, both alleging that the same, to the extent specified in their respective petitions, is no longer necessary for the public use, and that they are entitled as owners to be put in possession thereof, as claimed by them.

BARRETT
*v.*
NEW ORLEANS.

The defendant answered in both cases, by pleading the general issue; that the property in litigation is a *locus publicus;* and that the defendant, by actual and undisturbed possession for more than fifty years, has acquired by prescription a legal title to said property.

Thus a twofold controversy is presented in these consolidated cases, one between both plaintiffs and the city, and the other between the plaintiffs themselves.

The points involved in the first may be considered as settled by the decisions in the cases of *Kennedy* v. *Municipality No.* 2, 10 An., 54, and *Remy* v. *Municipality No.* 2, 11 An. 148. Touching the merits, we consider the Syndic's demand fully sustained by the evidence.

The other controversy presents the question whether *Thomas Barrett,* the insolvent, ever acquired any legal title to more than the undivided half of the alluvion in question. An affirmative answer to this question we think is fairly deducible from the evidence in the Record.

The Syndic sets forth in his petition that the insolvent purchased of *Maurice Cannon,* on the 29th of October, 1835, "the undivided half of the following property, to wit, all the right, title and interest, and that which *François Dominique Burthe* had in and to the batture in front of the lots of ground numbered one, two, three, four, five and six, situated in the Faubourg Delord, agreeably to a plan made by the City Surveyor, dated 30th March, 1832, &c; that the said lots of ground were then situated in the square bounded by Gaiennié, Susette and New Levee streets, and the public road or street next to New Levee Street and near the river, the lot No. one forming the corner of Gaiennié Street and the said public road, &c., and to the batture conveyed by *Maurice Cannon* to the insolvent, as above stated, situated on the other side of the Levee in front of the said six lots, and extending to the Mississippi River." The syndic's petition concludes with a prayer to be decreed the legal owner of the lots thus described, and of all the alluvion or batture formed in front thereof.

As to the undivided half of the batture in question, the insolvent's title, derived from *Constance Vivant,* is conceded to be valid; but as to the other undivided half, it is opposed by the plaintiff, *Valois,* on several grounds.

After the death of *Urbain Gaiennié,* the executors of his last will presented, it appears, a petition to the Probate Court of the Parish and City of New Orleans, in the following words, to wit:

" The petition of *E. Faurès* and *U. Gaiennié,* testamentary executors of the late *U. Gaiennié, further* humbly sheweth: That several creditors having opposed the sales *as directed* by this Hon. Court, at the request of your petitioners, of the real property of said estate *at one, two and three year's credit,* and desiring that the same should be sold at 6, 12 and 18 months credit, your petitioneers, to avoid law suits and difficulties, have consented to it. Wherefore they pray the order and authorization of this Hon. Court accordingly. And your petitioners further show that on the inventory of the property of said estate, a certain parcel of ground measuring —— feet front on ———, was inventoried and appraised in one lot. But your petitioners further show that the same was divided in twelve lots from Nos. 1 to 12, and that it becomes necessary, therefore, to have them appraised separately, and that said appraisement be made part of the original inventory. Wherefore they pray the order

of this Hon. Court to this effect, and that appraisers may be appointed and sworn by this Hon. Court."

The court therefore granted the following order :

"Let an appraisement of the twelve lots of ground within mentioned be made by *Messrs. A. Foucher, jr.*, and *C. Gurlie*, in the presence of *H. Lavergne, Esq.*, Notary Public, and let the said lots of ground be sold by the Register of Wills at six, twelve and eighteen months' credit, as within prayed for, and after the publication required by law.

New Orleans, March 8, 1825.

J. PITOT, Judge."

All the property of the estate of *Urbain Gainnié*, including the lots thus specified, appears to have been sold by the Register of Wills, on the 8th of April, 1825. The undivided moiety of a lot of ground, with the buildings thereon erected, also included in the sale, is described as situated "on the batture of suburb Delord, measuring 120 feet front to the river, by 250 in depth, forming a rectangular parallelogram, and bounded by the river, the property of *Messrs. Burthe & Foucher*, and New Levee and Gaiennié streets, &c." In the proces-verbal of the Register of Wills, also signed by the Judge, this sale is declared to have been made on the application of the executors, "and by virtue of a decree of the Probate Court, bearing date the 8th of March last past, and also after the publications required by law." Subsequently, on the 28th of July, 1825, the executors passed an act of sale to *Pierre Edmond Foucher* as the purchaser of the undivided half of the lot of ground thus described as fronting on the river.

This lot and the other property, as we infer from the petition and order of sale, which would seem to be merely supplemental, were sold for the ostensible purpose of discharging the debts of the estate. The validity of this sale, accompanied by uninterrupted possession, does not appear to have ever been previously questioned by any of the heirs.

It has always been held, in setting aside an illegal sale in favor of a minor, that the vendee was entitled to be allowed whatever he had paid in discharge of the debts of the former ; *a fortiori*, the appellant, *Valois*, in this case would certainly be bound for the reimbursement of the price applied to the discharge of the debts of his ancestor, before claiming the rescission of the sale, on the ground of the informalities of which she complains, if such informalities may be considered available.    6 N. S., 284; 8 N. S., 210.

It appears then that the tract of land thus sold to *Pierre Edmond Foucher* was bounded by the river, the real boundary, and that nothing intervened worthy of being considered a fit subject for exclusive ownership, giving him consequently the right of accession, although not expressed in the adjudication of the Register of Wills, and which would have been superfluous, inasmuch as such a right existed merely by the operation of law. Neither can it be pretended, that the sale from the executors could add anything more to it than what the purchaser had already acquired under the adjudication. The law on the subject of the right of accession appears to us to be clear and free from any ambiguity. "The accretions which are formed successively and imperceptibly to any soil situated on a shore of a river or creek, are called alluvions."

"The alluvion belongs to the owner of the soil situated on the edge of the water, whether it be a river or creek, and whether the same be navigable or not, who is bound to leave public that portion of the bank which is required

by law for the public use." C. C. 501, 6 M. R. 216, 8 N. S. 576. The creditors of the insolvent *Thomas Barrett*, who derived his title from *Pierre Edmond Foucher*, are therefore entitled to the alluvion in controversy.

Judgment affirmed.

ON A RE-HEARING.

VOORHIES, J. The counsel of *Mrs. Valois* in her application for a re-hearing have thought proper to use the following language:

"They find that their position in this case, and the object of this appeal, have been totally misapprehended, &c."

From a careful reconsideration of this case, we are now fully convinced that there is no error to the prejudice of the appellant in the judgment heretofore rendered by us, and consequently no foundation for such assertion. The object of *Mrs. Valois*' appeal appears to us to be too plain to be misapprehended. She claims, as already stated in our former judgment, by inheritance from her deceased father, *Urbain Gaiennié*, an undivided twelfth of all the alluvion formed between a certain tract of land described in her petition and the river Mississippi. It is, however, conceded by her counsel, that her ancestor's title to an undivided half of this tract, with the right to the alluvion, was divested on the 29th February, 1824, by virtue of a sale from him to *Constance Vivant*, *f. w. c.*, and that the same is now vested in the creditors of the insolvent, *Thomas Barrett*. But the counsel say : " *Gaiennié* died in 1825, and in the settlement of the estate, the other undivided half of the saw-mill and the property upon which it was situated, were sold by the Register of Wills on the 8th of April, 1825, pursuant to an order of court. In this sale, this property is described as situated on the batture of Suburb Delord, measuring 120 feet front to the river, by 250 in depth, forming a rectangular parallelogram, *and bounded by the river*." This, as must be observed in our decision, certainly did not escape our attention. But it may not be amiss to remark in this connection, that the proces-verbal of the Register of Wills shows that that sale purports to be a sale of all the property and effects of the succession of *Gaiennié*. This we think is certainly significant. If the alluvion in question was then a fit subject for exclusive ownership, it may be asked with propriety, why was it not mentioned in the inventory, the sale, or in any of the other proceedings of the succession? The counsel proceeds: "The court will, therefore, perceive, that when they say the question is presented, whether *Thomas Barrett*, the insolvent, ever acquired any legal title to more than the undivided half of the alluvion in question, they exhibit an entire misapprehension of the case." The Syndic claims the ownership of the entire tract or parallelogram, and as such riparian proprietor, all the alluvion in controversy. Whether it was proper to examine the title of *Barrett*, derived from the sale of the 8th of April, 1825, to an undivided half of this tract, is a question to which the counsel's brief affords, we think, an apposite answer. If that sale had not an important bearing on the question as to the right to the alluvion, why was its legality then so strenuously opposed by them?

In our opinion we said, "that the tract thus sold to *Pierre Edmond Foucher was bounded by the river, the real boundary*, and that nothing intervened worthy of being considered a fit subject for exclusive ownership, giving him

consequently the right of accession, &c." Have we erred in this conclusion? The counsel say : "In this case we base our claim entirely upon the ground, that there was outside of this parallelogram of 120 by 250 feet, sold to *Foucher*, an extent of batture sufficient to be susceptible of private ownership, which, not having been expressly included in the sale, still belongs with its accessories to the heirs of *Gaiennié.* But on what proof is this attempted to be justified? It is said that on the 26*th of April*, 1832, when *D. F. Burthe*, the vendee of *Foucher*, sold to *John Green*, a plan, under which that sale was made, showed that a public road, ordered by the City Council in 1830, now called Front Street, was situated at a distance of 307 feet from New Levee Street, and consequently 57 feet in advance of the parallelogram sold by the Register of Wills. That, "according to the testimony of Pilié, the batture has now increased to 400 or 500 feet in width in front of Front Street. Taking it at the outside estimate, the batture has increased 400 feet in 23 years, *a little over* 18 *feet per annum.* Supposing the batture to have increased prior to 1832, *at about the same rate as since*, which was no doubt the case, we find that of the 217 feet existing in 1832, in advance of the limit of the lot sold to *Foucher* in 1825, 125 feet were formed during the seven years, from 1825 to 1832. Consequently, there existed, at the time of the sale of *Foucher*, *over* 90 *feet* of batture in front of the prescribed limits of the lot sold to him by the Register of Wills." Is it upon such fanciful speculation or theory that we are bound to conclude that there must have existed outside of the parallelogram, on the 8th of April, 1825, an extent of batture sufficient to be susceptible of private ownership? If such had really been the case, it certainly must have been within the knowledge of persons then residing in the neighborhood by whom it could have been proved, and whose testimony should have been resorted to for that purpose. It is incumbent on a party to make his case certain and not probable merely.

The counsel have also thought proper to remark, " that their explanation in regard to the *clerical errors* in the decree of the court below, which render that decree a mere impracticable absurdity, has not even attracted the attention of this court." It is certain that the alleged errors could only result to the benefit of the appellant, *Mrs. Valois*, and consequently to the prejudice of the appellee. Hence, we must confess that we are at a loss to discover the reason or motive which prompted the remark. But be this as it may, we readily acknowledge that not only this, but the prayer of the appellee for an amendment of that decree in his favor had escaped our notice. Hence the amendment must be made to conform with our decision.

It is, therefore, ordered and decreed, that the judgment of the court below be amended by avoiding and setting aside that portion of it which reads as follows : " and it is further ordered and decreed, that *Mrs. Valois* be decreed to be the owner of one undivided twelfth part, 1-12, of the other undivided one half of the batture situated in front of the lot of ground formerly belonging to and owned by *Urbain Gaiennié* and fully described in the act of sale, the petition, and plan of *H. L. Pilié* on file, and that she be put immediately in possession of so much of said batture as is not required for public use at this time, as appears by a plan of *L. H. Pilié*, City Surveyor, on file herein ;" and that in every other respect said judgment be affirmed with costs.