## JAS. C. FULTON v. F. J. FRANDOLIG.

### (Case No. 1639.)

1. TITLE TO LAND BORDERING ON WATER AND MADE BY ACCRETIONS.— While it is true that land formed by gradual accretions, as well as that exposed by the gradual receding of the water, belongs to the owner of the contiguous land, such is not the rule when an actual survey shows that the water line on the front has not changed since the survey was originally made which called for it at the proper place by course and distance, and where the accretion has been formed on the extremity of a reef removed from the original survey, one end of which reef at one time adjoined said original survey.

APPEAL from Aransas. Tried below before the Hon. H. Clay Pleasants.

Suit in trespass to try title, commenced by the appellant, J. C. Fulton, administrator of Joseph F Smith, deceased, against the appellee, Frandolig, on the 5th day of March, 1880. Appellant claimed the land in controversy as being embraced in two patents for three hundred and twenty acres of land each, issued to the heirs of Henry Smith, deceased, one of which patents was issued to said heirs as the assignees of T. Crocroline, and the other was issued to said heirs as assignees of J. Hand.

Frandolig pleaded: First. Not guilty of trespass, etc. Second. A denial that Fulton, administrator of Smith, was in possession and lawfully seized in fee-simple of the premises described in petition on the 1st day of January, 1879, or at any other time. Third. That he, Frandolig, had been in adverse possession of the premises in controversy since August 6, 1878, and had erected valuable improve-ments thereon, and had planted valuable trees on the same, and that the land was vacant when he took possession of it, and that it was his homestead.

The two patents under which appellant claimed were for contiguous surveys fronting on Aransas bay and calling for the meanders of the said bay. The field notes in the patents state the meanders of the bay by courses and distances.

The cause was tried by the court alone without the intervention of a jury.

The conclusions of fact reached by the court upon the trial of the suit were : " That plaintiff's two tracts patented to Henry Smith as assignee of T. Crocroline and as assignee of Joseph Hand, and under which two patents the plaintiff asserts title to the lands in controversy, were located in 1840 and 1841, and that said lands were actually surveyed and the boundaries defined by courses and dis-

tances and corners by the surveyor of Refugio land district; that the bay shore was meandered as recited in these patents, and that the corners and distances and objects called for in the patents are substantially the same as given in the survey of these lands made under order of this court, upon motion of the defendant, in the month of March, 1881. That at the time the lands were located upon and severed from the public domain as aforesaid, there extended from the boundary of one of these tracts of land into the bay for a half a mile or more, a shell reef varying in width from twenty feet to fifty or sixty yards, and in elevation from a few inches to six or seven feet. That this reef's course was south southeast, and at and in the vicinity of the southeastern extremity of the reef there was some land, the same being very low; that at the point of contact with the plaintiff's land upon the bay shore the width of this reef was from twenty to thirty feet. That in 1869, during a storm, the water of the bay cut through the bay near the shore, and that since that time the land in controversy has, except for short intervals in very low tide, been entirely surrounded by the water of Aransas bay; that above the reef the water has cut a little into the shore, leaving one of the lines called for in the Crocroline grant a short distance from the shore into the water, as appears from the survey made in 1881, while just below the reef the water of the bay has receded, and what was water in 1841 is now marsh. That with these two slight exceptions, from a comparison of the calls given in the patents, and those given in the survey of 1881, the water boundary of these two tracts of land is the same now that it was in 1841; the courses, distances and corners being the same in the survey as those called for in the patents. That the lands patented were identified both as to the boundaries and the number of acres by the survey of 1881, and that the land in controversy, surrounded now as aforesaid by the waters of the bay and containing two hundred and thirty-nine acres, lies beyond the boundaries of the plaintiff's land."

The conclusions of law drawn by the court were: "That if there be an actual survey of the lands when severed from the public domain, and the boundaries of the land can be definitely ascertained from the calls in the grant, the grantee takes nothing outside of the established boundaries of the land, and hence in this case the grants to Crocroline and to Hand did not include the peninsula in controversy."

*McCampbell & Givens*, for appellant, cited: Galveston County *v.* Tankersley, 39 Tex., 651; Booth *v.* Strippleman, 26 Tex., 441;

Booth v. Upshur, 26 Tex., 70; Robertson v. Mosson, 26 Tex., 248; Urquhart v. Burleson, 6 Tex., 503; Hubert v. Bartlett, 9 Tex., 97; Anderson v. Stamps, 19 Tex., 460.

No briefs on file for appellee.

WATTS, J. COM. APP.— There is no doubt but that land formed by gradual and imperceptible accretion, as well as that formed by the gradual and imperceptible receding of the water, belongs to the owner of the contiguous land. In this respect there is no distinction between land gained by accretions and that gained by the recession of the water. New Orleans v. United States, 10 Pet., 662; County of St. Clair v. Lovington, 23 Wall., 46; Perry v. Pratt, 31 Conn., 442; Barrett v. New Orleans, 13 La. Ann., 105; Handly v. Anthony, 5 Wheat., 374.

It is also true that the right to alluvion depends upon contiguity; the accretions belong to the land immediately adjoining the water, however narrow it may be, and without regard to the size of the parcel behind it. Bates v. Illinois Central Railroad Co., 1 Black, 204; Saulet v. Shepherd, 4 Wall., 502; Posey v. James, 7 Lea (Tenn.), 98; Bristol v. Carroll County, 95 Ill., 84; Beaufort v. Duncan, 1 Jones (N. C.), 234.

According to the finding of the court, in making the original survey the surveyor actually run the lines upon the ground according to the calls for course, distance and meanders of the bay front. At that time there was a shell reef extending from the boundary line of the survey made for Smith, assignee of Crocroline, to the south southeast about a half mile, varying in width from twenty feet to fifty or sixty yards, and in elevation from a few inches to six or seven feet. At the southeast extremity of this shell reef there was some low marshy land. That at the point where the line as run by the surveyor in making the Smith survey crosses this reef, it was then about twenty or thirty feet wide.

From this finding it will be seen that all that part of this shell reef lying to the south southeast of the boundary line of the Smith survey, running along the general front of the bay, was not included in that survey, and it may be assumed belonged to the state as unappropriated public domain.

Now the accretion in controversy immediately adjoins and is contiguous to this shell reef lying to the southeast of the Smith survey. This accretion is not contiguous to the Smith survey, as claimed. But it seems that by gradual and imperceptible recession

of the water, and by gradual and imperceptible deposit, a considerable body of land has been formed immediately contiguous to the sheel reef, in the form of a small peninsula, the reef being the basis of the deposit and reliction.

From these facts it will be readily seen that the made lands do not belong to the Smith surveys, but originally the state, and now the appellee, if he has secured the state's title, is the owner.

The real point contended for by appellant is that as the calls of his grant are for the meanders of the bay according to certain calls for course and distance, that in the conflict the latter must yield to the former, and that being true, the Smith survey must be considered as embracing the shell reef.

But it should be remembered that the actual survey as made upon the ground, if it can be found and identified, controls. As is frequently said, the real object in applying the various calls is to find the footsteps of the surveyor. When these are found and identified all classes of calls must yield to them.

Here the court found, and upon sufficient evidence, that in making the Smith survey the surveyor in fact ran across the shell reef according to the call for course and distance. Hence according to the lines as actually run upon the ground, this shell reef, to the south and southeast of where the line crossed it, was not included in the Smith survey.

Our conclusion is that there is no error in the judgment, and we recommend its affirmance.

AFFIRMED.

[Opinion adopted February 16, 1885.]