ROSETTI v. CAMILLE. (No. 5921.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 21, 1917. Rehearing Denied. Dec. 19, 1917.)

1. EVIDENCE ☜10(1) — JUDICIAL NOTICE — GEOGRAPHICAL FACTS—POLICY OF SPANISH AND MEXICAN GOVERNMENTS.

The court judicially knows that the land in controversy in an action in trespass to try title, in Webb county, is in a dry and semiarid portion of the state, and that it was the policy of the Spanish and Mexican governments, in making grants, to give a front, if possible, on some stream or river.

2. NAVIGABLE WATERS ☜44(3)—LAND ADDED BY ACCRETION—TITLE.

Where the receding of a river and the consequent accretion of land are gradual and slow, the added land becomes a part of the adjoining land.

3. BOUNDARIES ☜14 — DESIGNATION OF HOMESTEAD—CALL OF DESCRIPTION AS ON RIVER.

Where a written designation of homestead gave one call of the description as on the bank of a river, the designation called for the river wherever it was at the time, and the homesteader's grantee of the remainder of the homesteader's land obtained title only as to what remained after such designation.

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

4. BOUNDARIES ⊂⊃3(3)—CONTROL OF COURSE AND DISTANCE BY CALLS FOR NATURAL OBJECTS.

Course and distance in a survey of land yield to calls for natural and ascertained objects, such as a river, a spring, or even a marked line.

5. EVIDENCE ⊂⊃390(3)—VARYING DEED—CONSTRUCTION OF SURVEY OF HOMESTEAD BY SOURCE OF TITLE.

In an action of trespass to try title, construction of the office survey of his homestead by the common source of title was properly ignored by the court.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by John T. Rosetti against Frank Camille. From a judgment for defendant, plaintiff appeals. Judgment affirmed.

H. G. Dickinson, of Laredo, for appellant. Greer & Hamilton, of Laredo, for appellee.

FLY, C. J. This is an action of trespass to try title to 107.2 acres of land in Webb county out of a tract known as the north half of porcion No. 14, instituted by appellant against appellee. The cause was tried without the intervention of a jury, resulting in a judgment in favor of appellee.

The north or upper half of porcion No. 14, containing 2,657 acres of land, is a part of a tract of land patented by the state of Texas to Jose Guajardo on June 30, 1862, which patent recites that the land was granted to said Jose Guajardo in the year 1776 by the government of Spain. Juan V. Benavides was the common source of title. It is admitted by the parties that he owned the north half of porcion 14, and that he conveyed the same to A. Winslow, trustee for appellant, to secure the payment of a promissory note given by him to appellant for the sum of $600. Afterwards, on January 5, 1903, Juan V. Benavides designated and set apart his homestead of 200 acres out of the porcion. In the written designation of the homestead, which was duly filed and recorded, the beginning point of the field notes was a stake on the bank of the Rio Grande, being the northwest corner of porcion 14 and southwest corner of porcion 13, the calls bring the land back to the river bank, and then calls are made for a line "along its meanders to the beginning." That land was afterwards, on April 25, 1903, sold by Juan V. Benavides and wife, Laura A. Benavides, to Amanda S. Allen, who, on February 3, 1914, conveyed the land to appellee. In that deed after making all the calls substantially as in the preceding deeds, she added:

"And also all my right in and to the abutting bottom land to the edge of the river."

Appellant claims the land in dispute, which is that situated between the bank or bluff and the actual waters of the Rio Grande, through a deed made by A. Winslow, trustee, to him, in which the land is described as follows:

"2,657 acres of land in porcion No. 14, which said tract of land fronts 500 varas on the Rio Grande and runs out and back from said river 30,000 varas in a northeasterly direction on a parallel line with the north boundary of this porcion; the tract of land herein conveyed being the upper or north half of said porcion, containing 2,657 acres. However, it is expressly understood and agreed by and between the said Juan V. Benavides and the said John T. Rosetti that the homestead designation of the said Juan V. Benavides, dated the 5th of January, 1903, and duly recorded in the record of deeds of said Webb county in volume 37, pp. 491, 492, 493, not to exceed 200 acres of land, shall and the same is hereby excepted from and out of this conveyance."

Appellant contends that the land in controversy was not comprised in the land designated as a homestead by Juan V. Benavides, and that he owns all the land in the porcion conveyed to him by the trustee except that described in the designation. There was no actual survey of the homestead when it was designated, but it was shown by the testimony of Juan V. Benavides that the land in dispute was intended to and did become a part of the homestead. He lived on the bluff, and always claimed the low land known as the "vega," now in dispute, as a part of his homestead. It was about the only cultivable land on the homestead tract, and Benavides made a farm of it. There was no water on the land if it did not extend to the river.

[1] It is judicially known to this court that the land in controversy is in a dry or semiarid portion of the state, and that it was the policy of the Spanish and Mexican governments in making their grants to give a front if possible on some stream or river. This is a part of the history of the country. In this case porcion 14 is about 18 miles long and only about one-half a mile wide, and a call is made for the bank of the river, showing an evident intent and design to give the land a front on the Rio Grande. This intention is conceded by appellant, for it is his contention that the call for the "bank of the river" and "up the river" in the patent meant to and along the water's edge. His claim to the land must be based upon that theory because if the porcion did not extend to the river's brink, he has not established any right to the land, whether appellee owns it or not. If, however, the beginning point described in the patent as "on the bank of river" means at the water's edge, and "up the river 1,590 varas to the place of beginning" means along the brink of the river, it would seem the beginning point in the homestead designation described as "at a stake on the River Rio Grande bank the N. W. corner of said tract and S. W. corner of porcion No. 13," would mean the edge of the water; and "to the river bank, thence along the river with its meanders to the place of beginning," would mean a return to the water's edge, and then with its meander-

ings to the beginning point. If the description in the patent means the brink of the river, undoubtedly the description in the homestead designation means the water's edge. The language of the designation is clearer than that of the patent, for it calls for the meanderings of the stream. Those meanderings could not have been followed by running a line along a bluff a half mile from the river.

The witness, Frees, made a survey of the land in controversy and began at a stone on the bluff 1,015 varas from the water's edge, and he assumed that it marked the northwest corner of porcion No. 14. There is no call for any such stone as is described by him, the call in the patent being for a mesquite, but if his survey be correct, then the land is not a part of porcion No. 14, and appellant has no right, title, or interest in the land, for if the beginning point of the porcion was about one-half a mile from the river the west line of the porcion did not touch the river at any point. The surveyor who testified for appellant, without knowing, assumed that a stone, not called for in the field notes of the porcion or any other field notes, was the northwest corner of the porcion, and on that he based his whole survey. He stated that he did not know whether it was a line stone or corner stone. If the stone was the beginning corner of the porcion, the latter did not go within a half mile of the water's edge, and neither appellant nor appellee own it, and appellant properly failed in his suit.

[2, 3] The land is described in the patent as lying "on the east bank of the Rio Grande," the beginning point is given as a mesquite "on the bank of the river," and the line going back toward the river strikes it at "a stone mound on bank of river" and from there the closing line runs "up the river 1,590 varas to the place of beginning." There is no testimony tending to show that the river has receded or changed its bed since the patent was granted. Either the river has changed its bed or the porcion runs to the water's brink. It would be contrary to all understanding or interpretation to entertain the idea that "on the bank of the river" means one-half a mile from the river. The only testimony on the subject of the receding of the river or accretions of land was that they are gradual and slow on the Rio Grande, and if so it would become a part of the adjoining land. Denny v. Cotton, 3 Tex. Civ. App. 634, 22 S. W. 122; Plummer v. Marshall, 59 Tex. Civ. App. 650, 126 S. W. 1162. But there was no proof of recession of the river or accretion of land as applied to this

case, but, if there had been, we fail to see how it would have benefited appellant, for the designation of the homestead called for the river wherever it was at the time, and appellant obtained title only as to what remained after such designation. In the first case cited it is fully settled that a call for the river bank means that, and not a point a half mile distant. The court said:

"It is apparent that the survey calls for the river and its meanders as one of the boundaries of the tract. These calls negative any purpose upon the part of the locator to leave any vacant land fronting the river not appropriated by his location."

This seems to be too clear for argument. The calls in that case were no plainer nor stronger than in this.

[4] The case of Fulton v. Frandolig, 63 Tex. 330, cited by appellant, has no bearing upon the facts of this case, and neither has the case of Howell v. Estes, 71 Tex. 691, 12 S. W. 62. The case of St. Clair v. Lovingston, 90 U. S. (23 Wall.) 46, 23 L. Ed. 59, fully sustains the opinion of this court. It enunciates the well-established rule that course and distance in a survey of land yield to calls for natural and ascertained objects, and that:

"A call for a natural object, as a river, a spring or even a marked line, will control both course and distance."

In the same case it is said under similar facts to the facts in this case:

"Where a survey and patent show a river to be one of the boundaries of the tract, it is a legal deduction that there is no vacant land left for appropriation between the river and the river boundary of such tract."

The case is decidedly in point, and sustains the judgment of the trial court.

[5] If Benavides told appellant before this suit was filed that the "vega" or low land was not a part of his homestead, which he positively denied, that could have no effect upon appellee's title as evidenced by the conveyances. The evidence showed that he did not intend to leave it as a part of the land covered by the deed of trust to Winslow, but reserved all rights in it as a part of his homestead. His construction of the office survey of the homestead was properly ignored by the court. The testimony of Benavides as to his construction of certain instruments could not affect the title of appellee to the land, and if it had amounted to anything it would not benefit appellant, but would show that the land belonged to the public domain, and appellant had no right to it. Appellant did not show title by limitations to the land.

The judgment is affirmed.