**Doug NORRELL, Appellant,**

v.

**ARANSAS COUNTY NAVIGATION DISTRICT # 1, Appellee.**

No. 13–97–380–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 26, 1999.

Rehearing Overruled Sept. 23, 1999.

Wade T. Howard, Berg, Androphy & Wilson, William Richard Thompson, Vinson & Elkins, Houston, for appellant.

Russell H. McMains, Law Offices of Russell H. McMains, Corpus Christi, S. Reese Rozzell, Rockport, for appellee.

Before Justices HINOJOSA, YAÑEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice YAÑEZ.

Appellant/Cross–Appellee, Douglas Norrell, appeals from a partial summary judgment in favor of Appellee/Cross–Appellant, Aransas County Navigation District ("the District"), dismissing Norrell's counterclaims against the District for declaratory and injunctive relief, violations of 42 U.S.C. § 1983, inverse condemnation, fraud, and breach of contract. In three points of error, Norrell claims the trial court erred in granting summary judgment because genuine issues of material fact exist as to whether he is a littoral property owner[1] and because the court erroneously applied the doctrine of collateral estoppel to determine as a matter of law that Norrell's property is not littoral. We reverse and remand in part and affirm in part.

In three points of error, the District cross-appeals the award of attorney's fees to Norrell, contending the trial court erred in awarding fees because: (1) Norrell was not entitled to fees because he was not a prevailing party; (2) the fees were unsegregated; and (3) the jury's answers on attorney's fees were immaterial because the contract between the parties required such fees to be "fixed by the court." We affirm the trial court's judgment awarding attorney's fees to Norrell and reverse the summary judgment on Norrell's counterclaims and remand those claims for trial.

## Background

This case involves a dispute over the ownership of a parcel of land that is adjacent to and appurtenant to Lot B, a .427 acre tract of land owned by Norrell and located on the Gulf coast in Aransas County, Texas. The property in dispute was allegedly created by accretion[2] along the eastern boundary of Norrell's property.

In 1858, the State of Texas granted to the heirs of Henry Smith, as assignee of Joseph Hond, a patent (the Hond Patent) to approximately three hundred and twenty acres of land in Aransas County, Texas. In 1991, Norrell acquired title to two tracts of land, both of which are contiguous and adjacent to the shoreline of Little Bay in the City of Rockport. This dispute involves the tract known as Lot B in the Harbor Oaks subdivision. The chain of title to Lot B has been traced back and established to the original Hond Patent transfer. The southeast boundary of Lot

---

[1]. Littoral property rights are appurtenant to land which borders a lake or sea. *See City of Corpus Christi v. Davis,* 622 S.W.2d 640, 646 (Tex.App.—Austin 1981, writ ref'd n.r.e.).

[2]. Texas recognizes the doctrine of accretion, under which the owner of riparian land gains title to land that accretes to his or her property by natural and imperceptible deposit. *See Ely v. Briley,* 959 S.W.2d 723, 726 (Tex. App.—Austin 1998, no pet.).

B is a line located at the identical location of the southeast boundary of the Hond survey. The original Hond Patent transfer included the property extending to the water's edge, or to the mean high tide line. The property in dispute is a twenty by three-hundred-foot strip of land that lies to the southeast between the surveyor's call line on Lot B and the mean high tide line of Little Bay adjacent to Lot B.[3]

The District claims title to this property based on a 1953 transfer of 604.296 acres of submerged lands adjacent to and along the "clearly defined shoreline" of Aransas Bay. In late 1991, Norrell constructed a boat ramp on Lot B for the boat rental and jet ski business he operates on the property. As owner of the submerged land adjacent to Lot B, the District notified Norrell that the boat ramp required him to enter into a lease agreement with the District. In early 1992, Norrell and the District executed a lease agreement, whereby Norrell agreed to lease a twenty by three-hundred-foot strip of "land and water" from the District. On various occasions over the next several years, Norrell had fill material deposited on Lot B in an effort to raise the lot elevation to the minimum level required for constructing improvements. Norrell contends that most of the fill material was deposited on Lot B, but concedes that occasionally, some material was deposited on the leased property to fill in "washouts" following rains. In 1995, the District terminated the lease agreement, claiming that Norrell had breached the agreement by placing fill material on the leased property and on the District's submerged land. Thereafter, Norrell removed the boat ramp from the leased property. The District sued Norrell for breach of the lease agreement and Norrell counterclaimed, asserting that he, rather than the District, owned the leased property. Following the trial court's dismissal of Norrell's counterclaims on summary judgment, the jury found in his favor on the

District's breach of lease claim and awarded him attorney's fees.

### Norrell's Appeal from Summary Judgment

We first address Norrell's appeal from partial summary judgment rendered in favor of the District that the summary judgment evidence establishes as a matter of law both that: (1) Lot B is not littoral, and (2) that *Fulton v. Frandolig,* 63 Tex. 330 (1885), determined that in the area in which Lot B is located, the Joseph Hond survey is not littoral and that Norrell is barred by the doctrine of collateral estoppel from re-litigating that issue.

### Burden of Proof

■ Rule 166a provides a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine fact issue. *Rhône–Poulenc, Inc. v. Kenda Steel,* 997 S.W.2d 217, 222 (Tex.1999). The party moving for summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. *Id.; see* Tex.R. Civ. P. 166a(c). A cross-defendant who seeks a summary judgment against a counterclaim has the burden of establishing, as a matter of law, that at least one element of the counterclaim does not exist. *Nautical Landings Marina, Inc. v. First Nat. Bank in Port Lavaca,* 791 S.W.2d 293, 299 (Tex.App.—Corpus Christi 1990, writ denied).

### Standard of Review

■ When reviewing a summary judgment, we follow these well-established rules: (1) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (2) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant. *American Tobacco Co. v.*

3. We cannot determine from the record where the shoreline lies at the present time.

*Grinnell,* 951 S.W.2d 420, 425 (Tex.1997); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). A trial court should grant a defendant's motion for summary judgment if the defendant disproves at least one essential element of the plaintiff's cause of action, or if the defendant establishes all the elements of an affirmative defense as a matter of law. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *Dickson v. State Farm Lloyds,* 944 S.W.2d 666, 667 (Tex.App.—Corpus Christi 1997, no writ). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *City of Garland v. Booth,* 895 S.W.2d 766, 768 (Tex.App.—Dallas 1995, writ denied).

■ In addition, a petition must give fair and adequate notice of the facts upon which the pleader bases his claim. *Dickson,* 944 S.W.2d at 667 (citing *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 354 (Tex.1995)). A defendant need not show that the plaintiff cannot succeed on any theory conceivable in order to obtain summary judgment, but is only required to meet the plaintiff's case as pleaded. *Id.*

Norrell asserted counterclaims against the District for declaratory judgment, injunctive relief, 42 USC § 1983 violations, inverse condemnation, fraud, and breach of contract. Norrell's counterclaims are based on contentions that he, rather than the District, owns the leased property because Lot B is littoral, with a boundary extending to the shoreline, or "mean high tide line," as defined in the Hond Patent. The District moved for summary judgment on the basis that it disproved as a matter of law an essential element of each of Norrell's causes of action, which is that Lot B is littoral.

In his first point of error, Norrell argues generally that the trial court erred in rendering partial summary judgment in favor of the District. In his second point, he argues specifically that the trial court erred in rendering summary judgment because genuine issues of material fact exist as to whether he is a littoral property owner and alternatively, the summary judgment evidence proves he is a littoral property owner as a matter of law. In support of its motion for summary judgment, the District offered the following "evidence:"

(1) Affidavit of Jerald L. Brundrett, Jr., a licensed engineer and land surveyor;

(2) Norrell's first amended answer and counterclaim, stating his land is Lot B of Harbor Oaks subdivision, that it is out of the Joseph Hond Survey, that the land in controversy is contiguous to Lot B, and that Norrell's claim to it is founded on his claim that Lot B is littoral;

(3) Norrell's oral deposition;

(4) Texas Supreme Court decision in *Fulton v. Frandolig,* 63 Tex. 330 (Tex. 1885);

(5) Recorded map of Harbor Oaks subdivision;

(6) Certified copy of patent to Joseph Hond Survey;

(7) Certified copy of patent to Terrance Crocoline Survey;

(8) Certified copy of patent to F.J. Frandolig Survey;

(9) Lease dated January 1, 1992 from the District, as lessor, to Norrell, as lessee;

(10) Certified copies of papers on file in *Fulton v. Frandolig,* including (a) plaintiff's trial petition; (b) defendant's trial answer; (c) judgment; (d) findings of fact and conclusions of law; (e) mandate from Supreme Court; and (f) opinion of Supreme Court;

(11) the District's original petition;

(12) Citation served on Norrell;

(13) Certified copy of deed dated November 5, 1991 from Mildred Marie Norrell to Douglas Norrell, showing Lot B as property deeded to Norrell; and

(14) Certified copy of patent from State of Texas to the District.

The District primarily relies on the subdivision plat of Harbor Oaks subdivision,

Brundrett's affidavit, and the supreme court's opinion in *Fulton v. Frandolig*, 63 Tex. 330 (1885), as summary judgment evidence supporting its position that Norrell's property is not littoral as a matter of law.

We begin by examining the Harbor Oaks subdivision plat and Brundrett's affidavit. Brundrett's affidavit states that he has surveyed Lot B and all tracts adjoining it. It further states that the southeast line of Lot B is at the identical location as the southeast line of the Hond survey.[4] The affidavit further states:

> Lot B is shown on the recorded plat of Harbor Oaks Subdivision Unit 1 as a lot of fixed dimensions. All of its boundary lines are lines with fixed locations described by course and distances marked on the plat. The plat does not show the shoreline as a boundary of Lot B.

The District argues that because the Harbor Oaks subdivision plat shows Lot B as a lot of fixed dimensions with determinable boundaries, Lot B does not, as a matter of law, have a shoreline boundary. We disagree. A long-standing principle in determining ownership of land is that we must defer to the grantor's intent. *John G. & Stella Kenedy Mem'l Found. v. Dewhurst*, 994 S.W.2d 285, 292 (Tex. App.—Austin 1999). The intent of the original grantor, as manifested by the original survey, dominates the determination of property grant boundaries. *Id.* (citations omitted). The survey made at the time of the grant controls if it can be found. *Id.* (citing *Fulton*, 63 Tex. at 333).

The established rule is that the footsteps of the surveyor shall, if possible, be followed in determining a boundary line. *State v. Brazos River Harbor Nav. Dist.*, 831 S.W.2d 539, 542 (Tex.App.—Corpus Christi 1992, writ denied) (citing *Howland v. Hough*, 570 S.W.2d 876, 882 (Tex.

1978)). This Court has previously recognized, however, the impossibility of following the footsteps of the surveyor into a river or along the tide line of the seashore. *Id.* "As the San Antonio Court of Appeals noted in *Moore v. Ashbrook*, 197 S.W.2d 516, [517] (Tex.Civ.App.—San Antonio 1946, writ ref'd), '[a] surveyor usually cannot go into a stream to make a corner, so he makes a corner on the bank in order to identify the place where he stopped—the rule being an exception to the one which requires following the footsteps of the surveyor.'" *Id.*

From this corner, the surveyor may run a meander line, a series of course and distance calls which follow the river or other natural object or monument as closely as is practically possible for purposes of calculating the amount of land conveyed. *Brazos River Harbor Nav. Dist.*, 831 S.W.2d at 542. When a meander line is used, however, the natural object or monument (e.g., a river, the seashore, or an identifiable terrain feature) will control over the specific calls for course and distance. *Id.* Thus, meander lines of surveys of land adjacent to or bounding upon a stream are not to be considered as boundaries, but they are to follow the general course of the stream, which in itself constitutes the real boundary. *Id.*

In the present case, the call for the southeastern boundary of the Hond Patent (a section of which is now the southeastern boundary of Lot B) reads, "[b]eginning on the S.E. corner of a survey made by virtue of Warrant No. 2714. Thence *with the meanders of the Bay* S. 52½ W. 458 ⁹/₁₀ varas, . . ." (emphasis added). The call for the "meander of the bay" language shows that the property where Lot B is located bordered tidal waters at the time of the Hond Patent.[5] We hold

---

**4.** The parties apparently do not dispute that the southeast boundary of Lot B is at the same location as the Hond Survey. Similarly, there is no dispute regarding the accuracy of the plat referred to by Brundrett, which includes parts of the Crocoline survey, Joseph

Hond survey, Frandolig survey, Navigation District survey, and Lot B.

**5.** Lot B and the Hond Patent's eastern call lines are virtually identical and are bordered to the east by the disputed property. We note

the trial court's determination that the Hond Patent is not littoral is inconsistent with the unambiguous language of the patent itself. Moreover, in deposition, Jerry Brundrett, the District's expert witness and affiant, testified as follows:

[A]t the time the Navigation patent was issued, we have photographic documentation that says not only the shoreline was probably not along the east line of the original Hond [Patent], but was probably westerly of that line.

We hold the trial court erred in determining as a matter of law that Lot B is not littoral. We sustain Norrell's first and second points.

In his third point, Norrell contends the trial court improperly applied the doctrine of collateral estoppel in determining that the issue of whether the Hond Patent was littoral or non-littoral property was decided in *Fulton v. Frandolig*. Collateral estoppel, or issue preclusion, bars the relitigation of any ultimate issue of fact that was actually litigated and essential to the judgment in a prior suit. *Getty Oil Co. v. Insurance Co. of N. A.*, 845 S.W.2d 794, 801 (Tex.1992); *Housing Auth. of City of Corpus Christi v. Massey*, 878 S.W.2d 624, 626 (Tex.App.—Corpus Christi 1994, no writ). To invoke the doctrine of collateral estoppel, a party must show that: (1) the facts to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the present parties were adversaries in the prior action. *Massey*, 878 S.W.2d at 626.

At issue in *Fulton v. Frandolig* was ownership of certain property known as "the reef" and the adjacent accretion. *Fulton*, 63 Tex. at 330–31. James Fulton, then owner of the Hond and Crocoline Patents,[6] claimed ownership of the reef based on his littoral rights and the doctrine of accretion. *Id.* at 330–332. The reef was located to the south southeast of Fulton's property. *Id.* at 332. The supreme court relied on the trial court's findings of fact, which recognized that the Hond and Crocoline properties were littoral properties, in holding that the reef, *which had existed at the time the original survey was completed,* was a separate and distinct piece of property which was not intended to be included in the patents.[7] *Id.* at 332–33. The court noted that at the point where the boundary line run by the surveyor crossed the reef, the reef was approximately twenty or thirty feet wide. *Id.* at 332. The court concluded, therefore, that in making the survey:

the surveyor in fact ran across the shell reef according to the call for course and distance. Hence according to the lines as actually run upon the ground, this shell reef, to the south and southeast of where the line crossed it, was not included in the Smith survey.[8]

*Fulton*, 63 Tex. at 333.

The District contends that in holding that "the actual survey as made upon the ground, if it can be found and identified, controls," *see id.*, the supreme court reject-

---

that the District submitted no evidence to suggest that the littoral rights included in the Hond Patent were somehow segregated or separated from the Hond Patent via transfer through the chain of title to Norrell.

6. The Crocoline Patent lies north of the Hond Patent. The southeast corner of the Crocoline Patent (also the northeast corner of the Hond Patent) lies on a line, which is also the northwest boundary of the Frandolig Patent and the southeast boundary of the Hond Patent.

7. The court cited the trial court's findings of fact, which included the following:

That the lands patented were identified both as to boundaries and the number of acres by the survey of 1881, and that the land in controversy, surrounded now as aforesaid by the waters of the bay and containing *two hundred and thirty-nine acres*, lies beyond the boundaries of [Fulton's] land.
(Emphasis supplied).
*Fulton*, 63 Tex. at 331.

8. The "Smith survey" included Fulton's two tracts, the Crocoline and Hond Patents.

ed the claim made by Norrell in the present case that Lot B is littoral. We disagree. We conclude that the supreme court's decision in *Fulton* does not establish as a matter of law that the area where Lot B is located is not littoral. Accordingly, we hold the trial court erred in concluding that *Fulton* fully and fairly litigated the issue of whether the Hond Patent was littoral and that Norrell's claims were barred by the doctrine of collateral estoppel. We sustain Norrell's third point of error.

### District's Appeal of Award of Attorney's Fees

We next address the District's appeal of the trial court's award of attorney's fees to Norrell.

In its first point, the District contends the trial court erred in awarding attorney's fees to Norrell because he did not recover a judgment on any affirmative claim and was, therefore, not a prevailing party entitled to attorney's fees. Norrell argues the award of attorney's fees was proper because he was the prevailing party in the District's breach of lease claim and accordingly, was entitled to recover reasonable attorney's fees under the lease agreement.

■ As a general rule, a prevailing party is not entitled to recover his attorney's fees from his adversary. *G. Richard Goins Constr. Co. v. S.B. McLaughlin Assocs., Inc.*, 930 S.W.2d 124, 130 (Tex. App.—Tyler 1996, writ denied). However, parties to a contract may provide by agreement that the prevailing party is entitled to recover attorney's fees. *Id.* (citing *Weng Enterprises v. Embassy World Travel*, 837 S.W.2d 217, 222–23 (Tex. App.—Houston [1st Dist.] 1992, no writ). The term "prevailing party," for the purposes of awarding attorneys' fees, refers to a party who successfully prosecutes an action *or successfully defends against an action* on the main issue. *Emery Air Freight Corp. v. General Transp. Sys., Inc.*, 933 S.W.2d 312, 316 (Tex.App.—Houston [14th Dist.] 1996, no writ); *Weng*

*Enter., Inc.*, 837 S.W.2d at 222–23; *Goins Constr. Co.*, 930 S.W.2d 124 at 130.

■ In the present case, Section 22 of the lease agreement provided as follows:

Attorney's Fees: In the event of any judicial proceeding in connection with this lease, the prevailing party shall be entitled to recover reasonable attorney's fees from the defeated party, as fixed by the court.

The District lost the only cause of action asserted against Norrell, breach of the lease agreement. Accordingly, Norrell was the prevailing and successful party in his defense on the main issue of breach of the agreement and is entitled to attorney's fees under the agreement. We overrule the District's first point of error.

■ In its second point, the District contends the trial court erred in awarding attorney's fees because no effort was made to segregate the fees expended by Norrell in prosecuting his claims lost on summary judgment and his defense of the District's breach of lease agreement claim. Norrell contends he segregated his attorney's fees before trial and only presented evidence at trial of the reasonable attorney's fees incurred in defense of the District's breach of contract claim. He argues the District presented no evidence that any of the attorney's fees were *not* incurred in defending against the District's claim. Moreover, Norrell argues the District waived the segregation issue by failing to object to Norrell's attorney's fees evidence or to the jury question submitted on attorney's fees.

■ If a party fails to object to a jury question on attorney's fees for failure to segregate fees, the objection is waived. Tex.R. Civ. P. 274; *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex.1997). Under such circumstances, a trial court may disregard the jury finding only if it is unsupported by the evidence or it is immaterial. *Green Int'l, Inc.*, 951 S.W.2d at

389. In this case, the District failed to object to the jury question on attorney's fees on the issue of segregation, the jury finding awarding attorney's fees was material, and the finding was supported by the evidence.[9] Thus, any error in the trial court's failure to segregate attorney's fees in the jury question and instructions was waived and cannot serve as a basis for barring the recovery of attorney's fees. We overrule the District's second point.

In its third point, the District contends the trial court erred in submitting the question on attorney's fees to the jury because the lease agreement provided such fees to be "fixed by the court." Norrell argues the trial court did fix the award of attorney's fees. The District failed to object to submission of the jury question on attorney's fees on the basis that such fees were to be fixed by the court. The District thus waived any error. Even if error had been preserved, we are unpersuaded that the trial court failed to comply with the provision that such fees were to be "fixed by the court." We overrule the District's third point.

Accordingly, we REVERSE the trial court's summary judgment on Norrell's counterclaims and REMAND for trial on those claims. We AFFIRM the remainder of the judgment awarding attorney's fees to Norrell.

---

9. Norrell presented evidence supporting the jury's findings regarding attorney's fees incurred "in this case through the preparation and completion of trial."