The CITY OF COLLEGE STATION,
Appellant,

v.

Harry E. SEABACK et al., Appellees.

No. 6039.

Court of Civil Appeals of Texas,
Waco.

Dec. 28, 1979.

Rehearing Denied Jan. 31, 1980.

Second Rehearing Denied Feb. 28, 1980.

Neeley C. Lewis and Stuart F. Lewis, Lewis & Lewis, Bryan, for appellant.

Ben Blum, Bailey, Blum & Lipper, Houston, W. Tyler Moore, Moore, Moore & Harris, Bryan, Larry Huelbig, Lapin, Totz & Mayer, Tom Connally and Robert S. Harrell, Fulbright & Jaworski, Houston, for appellees.

HALL, Justice.

The City of College Station brought this suit against Harry E. Seaback, Plantation Apartments Corporation (hereinafter "Plantation"), Deoux Chene Apartments, Inc. (Deoux Chene), and St. Paul Fire And Marine Insurance Co. (St. Paul) to collect for electricity and water services furnished by City to certain apartment complexes located in City's limits. City appeals from a take-nothing judgment rendered against it at the conclusion of its proof. We reverse the judgment and remand the case for trial.

City alleged that at the request of defendant Seaback and upon his promise to pay for the services City furnished electric and water services to the Plantation Oaks Apartments from August 20th to October 8th, 1975, and to the Deoux Chene Apartments from September 20th to October 14th, 1975; that the reasonable value of the services to Plantation Oaks Apartments was $23,019.36, and the reasonable value of the services to Deoux Chene Apartments was $9,766.12; that when the services were provided, defendant Plantation owned the Plantation Oaks Apartments, defendant Deoux Chene owned the Deoux Chene Apartments, Seaback was the authorized agent of both corporations, and the services were provided with the corporations' knowledge and for their benefit; that defendant St. Paul, as surety, had executed two bonds in the respective amounts of $9,120.00 and $9,300.00, with Seaback as principal on the

bonds, indemnifying City against any losses resulting from City's providing electricity and water to Seaback for the Plantation Oaks Apartments, and a third bond in the amount of $14,120.00, with Seaback as principal, indemnifying City against any loss in providing the services to Seaback for the Deoux Chene Apartments. By reference, City incorporated into its petition attached exhibits listing by number its invoices, and their amounts, rendered for the services provided to each of the apartment complexes. These listings included City's invoices numbered DE7–1343, DE7–1345, DE7–1351, DE7–1352, and DE7–1353, totaling $9,766.12, for the services provided to the Deoux Chene Apartments. City also incorporated attached copies of St. Paul's indemnity bonds. City prayed for recovery of $32,785.48 against Seaback on his promise; $23,019.36 against Plantation Apartments Corporation and $9,766.12 against Deoux Chene Apartments, Inc., on *quantum meruit*; and $28,186.12 against St. Paul on the bonds. City also prayed for attorneys' fees against Seaback, Plantation and Deoux Chene.

Defendants Seaback, Plantation Apartments Corporation, and Deoux Chene Apartments, Inc., answered City's suit with a general denial and the following special denial:

"That the items sued for and the account sued on is not due and owing by these defendants. That it is not the account of these defendants but the account of Cousins Mortgage And Equity Investments of Atlanta, Georgia. That it was never the account of Harry E. Seaback but was a Plantation Apartments Corporation and Deoux Chene Apartments, Inc. account which was in a Title 11 bankruptcy action and the funds involved in this action were taken by Cousins Mortgage And Equity Investments, Inc. of Atlanta, Georgia, and they were supposed to pay off and discharge said account."

Thereafter, those three defendants jointly filed a third-party action against Cousins Mortgage And Equity Investments in which they alleged the following facts:

"[Cousins] had a loan on an apartment project the subject of this law suit, known as Plantation Apartments and Deoux Chene Apartments in the City of College Station, Texas, . . . and foreclosed on said loan, in Plantation Oaks Apartments, Inc., and Plantation Apartments Corp. Title 11 in the Bankruptcy Court, Harris County, Texas, and on Deoux Chene Apartments, Inc. in College Station, Texas, under the Bankruptcy Title 11 of said corporation. That said property used electric and water services from the City of College Station. That the water and electrical services between August 20, and October 8, [1975] were used by [Cousins], while in said Title 11 and were part of the operating costs of said apartments. That on or about October 16, 1975, after [Cousins] took over full operation of said Plantation Apartments, Inc. a check was issued out of Plantation Apartments, Inc., in the amount of $23,019.36 [payable to City of College Station]. That said check was signed by Margie Sites, the authorized signature on said bank account and approved by [Cousins] . . . and [its] payment was authorized [by Cousins]. That attached hereto and marked 'Exhibit A' as if copied herein for all intents and purposes, is a copy of said check. That [Cousins] withdrew from said bank account the funds prior to said check reaching the bank.

"That attached hereto and marked 'Exhibit B' as if copied herein for all intents and purposes, is a copy of the meter readings for Deoux Chene Apartments, Inc. for a period of time wherein [Cousins] was operating Deoux Chene Apartments, Inc. and for which they used the services reflected on said 'Exhibit B' and that [Cousins] collected the rental therefor and was to pay said service of $9,766.12.

"That by virtue of the acts and conducts [Cousins] is liable to Plaintiffs herein for monies had and received belonging to Plaintiffs for which Plaintiffs here now sue in the total sum of $32,785.48,

the total of the check and the outstanding utility bills reflected on Exhibit B.

"Pleading further in the alternative, Plaintiffs will show to the Court that [Cousins] by and through their duly authorized agent . . . and by their attorney . . . agreed, bound and obligated [Cousins] to pay said utility as alleged in Exhibits A and B. And by virtue of such agreement [Cousins] became liable to the Plaintiffs herein for said funds.

"Pleading further in the alternative, the Plaintiffs will show the Court that [Cousins] fraudulently represented to Plaintiffs that all of said funds had been paid off and discharged by them in the accounting in handling said apartment projects after foreclosure to the Plaintiffs' damage as herein alleged.

"Wherefore, premises considered, the Plaintiffs pray that . . . [they] have judgment recovering the sum of $32,785.48."

The check attached to the petition in the third-party action as "Exhibit A" for the sum of $23,019.36, was check no. 1553, was drawn on the account of Plantation Apartments, Inc., in First Bank & Trust, Bryan, Texas, was payable to City of College Station, and was signed by Margie Sites for Plantation Apartments, Inc., as maker, and was dated October 16, 1975. The back side of the check bore these stamped notations: "insufficient funds" and "endorsement cancelled." The instruments attached as "Exhibit B" to the petition were copies of City's invoices numbered DE7–1343, DE7–1345, DE7–1351, DE7–1352, and DE7–1353, totaling $9,766.12, for electric and water services provided by City to the Deoux Chene Apartments.

St. Paul answered City's suit with a general denial. It then filed a third-party action against Seaback and Cousins Mortgage And Equity Investments in which it alleged City's suit and sought indemnity for any sums recovered by City against it. In its action against Cousins, St. Paul pleaded that it "adopts by reference all of the allegations alleged by Seaback in his third party action against Cousins just as if such allegations were copied herein verbatim."

The case was tried to the court without a jury. An opening discussion between the court, counsel for Seaback, Plantation, and Deoux Chene, and counsel for Cousins, brought forward these facts: When the construction of the apartments was originally completed, Plantation Apartments Corporation and Deoux Chene Apartments, Inc., owned and operated the apartments, and Seaback was president of both corporations. Cousins held mortgages on the apartments which were secured by deed of trust liens. The apartments were operated by the corporations and Seaback for about three years until January, 1975, when the corporations, but not Seaback, were placed in a Title Eleven bankruptcy proceeding. The corporations (and Seaback) continued operating the apartments under a reorganization plan in the bankruptcy court until Cousins foreclosed its liens on the apartments in the Fall of 1975. Cousins foreclosed on the Plantation Oaks Apartments on October 7, 1975; and it foreclosed on the Deoux Chene Apartments on November 4, 1975. The bills for the utility services sued upon by City accrued during the bankruptcy proceeding and remained unpaid when Cousins foreclosed on the apartments. However, when Cousins foreclosed, it received some rentals on the apartments which had also accrued during the bankruptcy proceeding. Those circumstances gave rise to the suits against Cousins by Seaback, Plantation, Deoux Chene, and St. Paul. City expressed "no interest" in those disputes, and sought only the recovery of its bills against its pleaded defendants.

City's proof consisted of the testimony of the manager of its utility department and fourteen exhibits admitted without objection. The evidence shows that City began servicing the Deoux Chene Apartments and the Plantation Oaks Apartments upon Seaback's request for the service. In lieu of placing a cash deposit with City when he requested the services, Seaback secured the surety bonds from St. Paul in City's favor. The three bonds sued upon by City are in

evidence. One indemnifies City in the amount of $9,120.00 against any loss for furnishing electricity and water to Seaback for Plantation Oaks Apartments, Phase 3; another indemnifies City in the amount of $9,300.00 against any loss for furnishing electricity and water to Seaback for Plantation Oaks Apartments, Phase 4; and the third indemnifies City in the amount of $14,120.00 against any loss for furnishing electricity and water for Deoux Chene Apartments. All three bonds were signed personally by Seaback, as principal; and they were executed by St. Paul, as surety. Excepting their amounts and the names of the apartments, the bonds are identically worded in their pertinent parts. Each contains the following paragraphs among its other provisions:

"Whereas, the said HARRY E. SEABACK has requested the said City of College Station to furnish electricity and/or water to the said HARRY E. SEABACK and PROMISE to pay for the same upon the rendition of bills therefore from time to time without exacting the required customary deposit and which the said City of College Station is willing so to do upon being indemnified against any loss on account thereof:

"Now, therefore, the condition of the above obligation is such that if the above bound, HARRY E. SEABACK ([name of apartment placed here, viz., 'Plantation Oaks Apts.—Phase 4']) shall well and truly pay or cause to be paid unto the City of College Station all bills upon respective rendition thereof, for the furnishing of electricity and/or water from time to time, as aforesaid, together with all interest, costs, and other penalties which may accrue by reason of the furnishing of said electricity and/or water and all in accordance with the rules and regulations of said City of College Station, then this obligation shall be void and of no effect."

The evidence shows that electricity and water were provided for the apartments on the dates in question, that City's invoices were sent to Seaback for payment, and that the bills are unpaid after demand for payment. City also made demand on St. Paul

for payment under the bonds. The unpaid charges for services to the respective apartments are as follows: Plantation Oaks Apartments, Phase 3, $10,368.39; Plantation Oaks Apartments, Phase 4, $12,650.67; Deoux Chene Apartments, $9,766.12.

Copies of City's invoices are in evidence. Those for Deoux Chene Apartments are numbers DE7–1343, DE7–1345, DE7–1351, DE7–1352, and DE7–1353. They are identical in every respect to the invoices containing those numbers which were attached to and a part of the pleadings of Seaback, Plantation, and Deoux Chene in their third-party complaint against Cousins.

City's exhibits in evidence also included copies of the front and back sides of Plantation's check number 1553 payable to City in the amount of $23,019.36, dated October 16, 1975, and signed by Margie Sites as agent for Plantation. This check is the identical check sued upon by Seaback, Plantation and Deoux Chene in their third-party action against Cousins. The evidence shows this check was received by City on October 17, 1975, and was credited by City to the account of Plantation Oaks Apartments, but was returned to City after deposit with the notations "insufficient funds" and "endorsement cancelled" stamped on its back side.

City did not attempt to prove any ordinances or other regulations by it setting the rates for the utilities in question.

When City closed its proof, Seaback, Plantation, Deoux Chene, and St. Paul moved for judgment that City take nothing against them on the ground that there was no evidence that the charges made by City for its utility services to the apartments were reasonable. Cousins also moved for judgment on the third-party action against it on the same ground, stating "we feel that we are also entitled to judgment, at least as to Deoux Chene, that would be the bill that's not included within the check."

The motions were granted, and judgment was rendered that City take nothing against its defendants and that those parties take nothing against Cousins. The judgment contains the following recitation:

"The Plaintiff proceeded to present its case in chief. After Plaintiff had rested, all of the Defendants and the third-party Defendant made their oral motion for Judgment. Whereupon, the Court, after first having considered Plaintiff's evidence, the papers and pleadings on file and the argument of counsel, was of the opinion that said motion should be granted."

A judgment rendered for the defendant at the close of the plaintiff's case in a non-jury trial is tested on appeal under the rules which apply in a jury trial where the court has withdrawn the case from the jury or instructed a verdict against the plaintiff and rendered judgment for the defendant. Only the evidence and inferences therefrom which tend to support the plaintiff's case may be considered. In this light, if there is no evidence supporting one or more essential elements of the plaintiff's case, then the court's action was correct. *Allen v. Nesmith*, 525 S.W.2d 943, 945 (Tex. Civ.App.—Houston [1st Dist.] 1975), writ ref. n. r. e. (Tex.1975) 531 S.W.2d 330; *Burkhardt v. Harris*, 200 S.W.2d 445, 446 (Tex.Civ.App.—Austin 1947, no writ).

For affirmance of the judgment, all of the defendants, including Cousins, assert there was no evidence that City's charges were reasonable. Seaback and St. Paul also contend there was no evidence of an agreement by Seaback with City to pay for the furnished utilities. Additionally, St. Paul argues there was no evidence that the utilities were furnished by City "all in accordance with the rules and regulations of said City," as required under the terms of the bonds. City disputes those contentions and asserts for reversal that all essential elements of its causes of action, including those disputed above, were made in part by "stipulations and judicial admissions of appellees made prior to or during the proceedings" and by the direct proof. City's argument of judicial admissions by defendants makes express reference to the third-party pleadings filed by Seaback, Plantation, and Deoux Chene, which were adopted by St. Paul.

The bonds recite that the utilities were furnished by City to the apartments in question upon Seaback's request and his promise to pay therefor. It is undisputed that the bonds were signed personally by Seaback, as principal therein. They establish City's allegations that Seaback agreed to pay for the services, and support City's suit against Seaback and St. Paul on that ground.

The judgment recites that the court considered the pleadings filed in the case. City argues that its actions are established in part, especially as to the reasonableness of the charges, by admissions contained in the third-party pleadings filed by Seaback, Plantation, and Deoux Chene against Cousins, which were adopted by St. Paul. We agree.

Allegations in the defendant's answer in which a general denial is interposed may not be used as evidence to establish the plaintiff's case. *Hynes v. Packard*, 92 Tex. 44, 45 S.W. 562, 564 (1898); *McRoy v. Riverlake Country Club, Inc.*, 426 S.W.2d 299, 303 (Tex.Civ.App.—Dallas 1968, writ ref. n. r. e.); *Boothe v. Blanchette*, 208 S.W.2d 105, 109 (Tex.Civ.App.—Beaumont 1948, no writ); 24 Tex.Jur.2d 207, Evidence, § 631. However, admissions contained in a cross action by the defendant are not subject to this limitation. *Mowery v. McNamara*, 424 S.W.2d 252, 254 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ); *Ed S. Hughes Co. v. Clark Bros. Co.*, 63 S.W.2d 230, 232 (Tex. Civ.App.—Eastland 1933, no writ). Rather, they are formal judicial admissions which effect a waiver by defendant of proof by plaintiff of the facts admitted. 2 McCormick and Ray, Texas Law of Evidence (2d ed. 1956), p. 33, § 1144; *Mahoney v. Mahoney*, 103 S.W.2d 459, 462 (Tex.Civ.App.—Amarillo 1937, writ ref.).

It is also the rule that a party's pleadings in other actions which contain statements inconsistent with his present position are receivable against him as admissions. *St. Paul Fire & Marine Insurance Co. v. Murphree*, (1962) 163 Tex. 534, 357 S.W.2d 744, 747. This rule applies to the

party's use of the statements of another by adoption. *Thornell v. Missouri State Life Ins. Co.*, 249 S.W. 203, 207 (Tex.Com.App. 1923, jdgmt. adopted). Admissions of this nature, unlike formal judicial admissions, are not conclusive on the admitter. He may explain, contradict or even deny them. 2 McCormick and Ray, Texas Law of Evidence (2d ed. 1956), p. 26, § 1128. Nevertheless, "[a]s a true exception to the hearsay rule they prove the truth of the facts admitted." *Hartford Accident And Indemnity Co. v. McCardell*, (Tex.1963) 369 S.W.2d 331, 337.

■ The correctness of the items of an account and the fact that the account is due and owing may be proved by the defendant's express or implied admissions. *Chandler v. Meckling*, 22 Tex. 36, 37 (1858); *Davis v. Gilmore*, 244 S.W.2d 671, 675 (Tex. Civ.App.—San Antonio 1952, writ ref.); *Wilson v. Clarke Floor Machine Company*, 380 S.W.2d 768, 770 (Tex.Civ.App.—Eastland 1964, no writ); *McLain v. Sitton*, 374 S.W.2d 945, 946 (Tex.Civ.App.—Beaumont 1964, no writ); 1 Tex.Jur.2d 313, Accounts and Accounting, § 63.

■ Seaback, Plantation, Deoux Chene, and St. Paul expressly based their third-party actions against Cousins on the $23,019.36 check representing the amount of the City's utility bills against the Plantation Oaks Apartments, and on the City's invoices totaling $9,766.12 for utility services to the Deoux Chene Apartments. They did not seek indemnity in the event City succeeded on its suit; rather, they asserted they were entitled to recover the total amount of the bills, in the sum of $32,785.48, directly from Cousins as monies due and owing to them. They alleged the items they sued upon were "outstanding utility bills" and "debts" of the apartments for "services used," and that they were "operating costs of the apartments."

The third-party complaints, being grounded solely on City's bills for electric and water services to the apartments, necessarily admitted the justness of the bills and that they were due and owing. In other words, by affirmatively seeking to recover on the bills, the third-party plaintiffs admitted the bills were proper in every material particular, which included admissions that the charges were reasonable and were properly effected under City's rules and regulations.

■ · The petitions in the third-party actions were active pleadings in the case which, according to the judgment, were considered by the trial court in reaching its conclusion that City should take nothing. If the defendants' admissions in those pleadings were not irrefutable judicial admissions within the rule relating to admissions in cross actions, they nevertheless were receivable against defendants in support of City's suit under the rule relating to admissions made by a party in pleadings in "other actions."

The judgment is reversed, and the case is remanded for trial.

## ON REHEARING

Seaback, Plantation and Deoux Chene assert that the admissions in their third-party complaint were not invoked on the trial by City and were therefore waived. We overrule this contention. All the parties announced ready on the trial and stated to the court their positions and contentions under their respective pleadings. City then proceeded to prove the amount of its charges and St. Paul's indemnity bonds. The admissions in the third-party actions stand uncontradicted in the record. None of City's proof was inconsistent with the admissions. The judgment recites that the court considered the evidence and "the pleadings on file" in reaching its conclusion that there was no evidence supporting certain essential elements of City's case. For the reasons set forth in our original opinion, we remain convinced that the court erred in its conclusion.

■ St. Paul asserts the pleading denominated "Third Party Action" which it adopted was in fact an alternative plea for indemnity against Cousins in the event City succeeded in its suit, and accordingly that the admissions contained in it could not be

considered in proof of City's case. We disagree. The third-party complaint against Cousins is grounded on pleadings of conversion of certain funds, unjust enrichment, breach of contract, and fraud. City's suit against the complainants is not even mentioned in it; and, as we have already noticed, the prayer sought directly, and not contingently, the recovery of the sum sued for. Our view that the third-party action was not intended merely as a plea for indemnity is further supported by the fact that the original complainants in the third-party suit—Seaback, Plantation, and Deoux Chene—included in their answer to City's suit a count for indemnity against Cousins in the event City succeeded against them, and adopted their pleadings in the third-party complaint as grounds therefor, as follows:

"The defendants say that the Third Party Defendant in the Third Party Action to be filed herein is liable to this Defendant for any amount, if any, that the Plaintiff herein recovers from these defendants and that they should have judgment over and against the Third Party Defendant as alleged therein. And all provisions of the Third Party Action are adopted and made a part hereof."

It is clear under the pleadings in the third-party action that the complainants were asserting that Cousins had come into possession of funds collected during the bankruptcy proceeding which belonged to the complainants, in an amount based upon and equal to certain water and electric utility bills incurred by the apartments during the bankruptcy proceeding, and that complainants were entitled to recovery of funds, without regard to the recovery or not by City on its suit, because the funds represented "operating costs" of the apartments during the bankruptcy proceeding.

Other contentions by Seaback, Plantation, Deoux Chene and St. Paul for rehearing are also overruled.

 Seaback, Plantation, Deoux Chene, and St. Paul did not appeal from the take-nothing judgment against them in favor of Cousins on the third-party action; and they seek no relief here, alternatively or otherwise, from that judgment. City, not being interested in the third-party action, appealed only from the judgment against it in favor of Seaback, Plantation, Deoux Chene, and St. Paul. Although Cousins filed a brief and orally argued on this appeal in support of the take-nothing judgment against City, it consistently maintained in its brief and oral argument that the third-party actions against it were independent actions. Cousins contends that under those circumstances we erred in reversing the take-nothing judgment in its favor on the third-party actions and in assessing costs of this appeal against it. We sustain those contentions.

 It is the general rule that where one party appeals from a judgment, a reversal as to him will not justify a reversal against the other non-appealing parties. However, this rule does not apply in cases where the respective rights of the appealing and non-appealing parties "are so interwoven or dependent on each other as to require a reversal of the whole judgment where a part thereof is reversed." *Lockhart v. A. W. Snyder & Co.*, 139 Tex. 411, 163 S.W.2d 385, 392 (1942).

We have demonstrated that the third-party actions against Cousins are independent and distinct suits not at all grounded upon nor interwoven with City's suit against the third-party complainants. Of course, this is not so as to the count for indemnity set up in the answer of Seaback, Plantation and Deoux Chene.

Cousins's motion for rehearing is granted. Our prior judgment is set aside and judgment is here rendered as follows: The take-nothing judgment against City is reversed, and that cause is remanded for trial. The take-nothing judgment against Cousins on the third-party actions is affirmed. The costs of this appeal are assessed against Seaback, Plantation, Deoux Chene, and St. Paul.