The STATE of Texas, the General Land Office of the State of Texas, and the School Land Board of the State of Texas, Appellants,

v.

BRAZOS RIVER HARBOR NAVIGATION DISTRICT, Appellee.

No. 13–91–279–CV.

Court of Appeals of Texas, Corpus Christi.

May 28, 1992.

Rehearing Overruled June 30, 1992.

Jonathan Steinberg, Asst. Atty. Gen., Energy Div., Dan Morales, Atty. Gen., Will Pryor, First Asst. Atty. Gen., Mary F. Keller, Executive Asst. Atty. Gen., Ed Salazar, Asst. Atty. Gen., Chief, Energy Div., Austin, for appellants.

Leland B. Kee, Kee, Patterson & Neal, Attorneys at Law, Angleton, for appellee.

Before NYE, C.J., and SEERDEN and BISSETT[1], JJ.

## OPINION

SEERDEN, Justice.

The State of Texas, the General Land Office, and the School Land Board (collectively the "State") appeal from a summary judgment rendered in favor of Brazos River Harbor Navigation District (Brazos) for title to certain property along the shoreline of the Gulf of Mexico. We reverse and remand.

In 1870, the State granted to the heirs of James P. Caldwell a patent (the Caldwell Patent) to approximately 2,125 acres of land in Brazoria County, Texas. By a 1982 deed from a successor-in-title to the Caldwell heirs, Brazos now holds title to these lands. Brazos brought the present suit after the State attempted to grant mineral leases on lands which Brazos alleges form a part of the property owned by Brazos along the shoreline by virtue of the Caldwell Patent.[2] Brazos contends that the State's actions create a cloud on title and raise a question concerning the construction of the Caldwell Patent and the ownership of accretions to the shoreline.

In order to support its claim to property along the shoreline and accretions, Brazos argued not only rules of construction regarding the Caldwell Patent, but also theories of judicial admission and equitable estoppel. In 1973, the State, acting through the Parks and Wildlife Department and the County of Brazoria, filed a Petition in Condemnation against Brazos' predecessor-in-title, Freeport Sulphur Company (Freeport), to acquire portions of the land along the coast that is presently disputed. Specifically, the State alleged that 36.559 acres along the coast was a part of the Caldwell Patent. In 1974, the district court awarded the State the 36 acre portion in condemnation, with payment of compensation to Freeport and a reservation to Freeport of the mineral interest. Brazos contends that the State by its Petition in Condemnation has made a judicial admission that the disputed lands are a part of the Caldwell Patent.

In addition, in 1989, Brazos granted to the Texas Parks and Wildlife Department a Conservation Easement covering 1,065.54 acres of land out of the Caldwell Patent including the disputed coastal lands. The Department accepted the easement and signed it on behalf of the State. Brazos argues that the State's acceptance of the Conservation Easement equitably estops it from disputing the fee simple title of Brazos to these lands.

Both Brazos and the State brought motions for summary judgment. The trial court denied the State's motion for summary judgment, and granted Brazos' motion for declaratory summary judgment, ordering that the lands described in the Caldwell Patent extended to the shoreline of the Gulf of Mexico and as granted were riparian to the waters of the Gulf of Mexico, and that the accretions thereto are owned by Brazos.[3]

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

2. Pursuant to House Concurrent Resolution No. 40, 71st Legislature, Regular Session, 1989, passed by the House and Senate and approved by the Governor, the State granted Brazos permission to bring the present suit against it.

3. We note that, although the State's motion for summary judgment was denied, it brings no point of error specifically arguing that the trial court erred in failing to grant summary judg-

By its third point of error, the State argues generally that the trial court erred in rendering summary judgment in favor of Brazos. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding a summary judgment, evidence favorable to the non-movant will be taken as true, every reasonable inference must be indulged in the non-movant's favor, and any doubts must be resolved in his favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

By its fourth point of error, the State argues specifically that the trial court erred by rendering summary judgment for Brazos that the Caldwell Patent granted land fronting on the shoreline of the Gulf of Mexico. The Caldwell Patent granted to the heirs of James T. Caldwell a half-league of land, described generally as, "In the *County of Brazoria* on the *Gulf Coast* between the *Brazos* and *Bernard Rivers*," and more specifically as, in pertinent part, *"Beginning* at a Cedar Post marked 'G.P.' on the East side and 'M' on the West side ... [with intermediate calls] ... to a post marked 'GM' on the West side and 'B' on the East side about 30 vs. from tide water. *Thence* 59 [degrees] West 4294 varas to the place of Beginning."

■■■ Generally, the construction of an unambiguous deed is a question of law for the court, based on the intent of the parties as expressed within the four corners of the instrument. *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex.1986). Specifically, where the facts are undisputed concerning the location of a boundary call, it becomes a question of law for the courts to determine whether the boundary call is a meander line or a boundary line. *Ulbricht v. Friedsam*, 159 Tex. 607, 325 S.W.2d 669, 672 (1959); *Strayhorn v. Jones*, 300 S.W.2d 623 (1957).

■■■ It is an established rule that the footsteps of the surveyor shall, if possible, be followed in determining a boundary line. *Howland v. Hough*, 570 S.W.2d 876, 882 (Tex.1978). However, we recognize the impossibility of following the footsteps of the surveyor into a river or along the tide line of the seashore. As the San Antonio Court of Appeals noted in *Moore v. Ashbrook*, 197 S.W.2d 516 (Tex.Civ.App.—San Antonio 1946, writ ref'd), "[a] surveyor usually cannot go into a stream to make a corner, so he makes a corner on the bank in order to identify the place where he stopped—the rule being an exception to the one which requires following the footsteps of the surveyor." *Id.* at 517 (citing 7 Tex.Jur. *Boundaries* § 14 (1930)).

■■■ From this corner, the surveyor may run a meander line, a series of course and distance calls which follow the river or other natural object or monument as closely as is practically possible for purposes of calculating the amount of land conveyed. When a meander line is used, however, the natural object or monument (e.g., a river, the seashore, or an identifiable terrain feature) will control over the specific calls for course and distance. *Howland*, 570 S.W.2d at 882; *State v. Arnim*, 173 S.W.2d 503 (Tex.Civ.App.—San Antonio 1943, writ ref'd w.o.m.) (on rehearing). Thus, meander lines of surveys of land adjacent to or bounding upon a stream are not to be considered as boundaries, but they are to follow the general course of the stream, which in itself constitutes the real boundary. *Stover v. Gilbert*, 112 Tex. 429, 247 S.W. 841 (Comm'n App.1923, opinion adopted); *see also Selkirk Island Corp. v. Standley*, 683 S.W.2d 793, 795 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

■■■ In the present case, if, as Brazos contends, the last call in the Caldwell Patent should be construed as a meander line along the shore of the Gulf, then the shore itself does form the true boundary. The State, however, contends that the last call

ment for the State. Therefore, the only issue on appeal is whether the trial court erred in granting Brazos' motion for summary judgment. *See Cotten v. Deasey*, 766 S.W.2d 874, 879 (Tex.

App.—Dallas 1989, writ denied); *Buckner Glass & Mirror, Inc. v. T.A. Pritchard Co.*, 697 S.W.2d 712, 714 (Tex.App.—Corpus Christi 1985, no writ).

is, as a matter of law, not a meander line but a boundary line cutting Brazos off from any claim to the shore or littoral rights. As there was no dispute concerning the actual location of the boundary call, it was a question of law for the trial court to determine whether the last boundary call in the Caldwell Patent was a meander line or a boundary line. *Ulbricht,* 325 S.W.2d at 672.

■ Where the natural object is clearly referred to in the patent or deed as a boundary of the land conveyed, specific course and distance calls will be construed to be a meander line. Thus, in other Texas cases of this type the grant introduces the meandering course and distance calls with a specific reference to a river or other natural object as the boundary. *See Strayhorn,* 300 S.W.2d at 631 ("following the meanderings of [the river]"); *Stover,* 247 S.W. at 843 ("[t]hence down the river the following courses and distances"); *Selkirk Island Corp.,* 683 S.W.2d at 795 ("following the meander of the Westerly shore of the New dredged channel"); *Allen v. Morales,* 665 S.W.2d 851 (Tex.App.—Fort Worth 1984, no writ) ("[t]hence upstream along the right bank of the [river]"); *Meyer v. Worden,* 575 S.W.2d 366, 369 (Tex. Civ.App.—Waco 1978, writ ref'd n.r.e.) ("along a meander line of the West bank of the [river]"); *see also State v. Atlantic Oil Producing Co.,* 110 S.W.2d 953, 957 (Tex. Civ.App.—Austin 1937, writ ref'd) (patent specified location of grant "on the north side of the [river]," together with numerous course and distance calls to run "with said river" and clearly following the course of the river.).

■ However, where the specific course and distance calls are not directly referable to a natural object boundary from the language of the deed or patent, the cases suggest that the specific calls are the true boundary line, notwithstanding their proximity to a natural object such as a river or lake. *See Hejl v. Wirth,* 161 Tex. 609, 343 S.W.2d 226 (1961); *Ulbricht v. Friedsam,* 159 Tex. 607, 325 S.W.2d 669 (1959). The deed in *Hejl* specifically followed a creek bed to a particular point, and went from

that point "thence South 38 East 560 vs. to the beginning" at another point in the creek bed around a bend in the creek. If drawn as a straight line, the last call would thus leave a strip of land between the call line and the creek outside of the grant.

In determining whether the last call should be followed as a straight boundary line or as a meander line along the creek, the *Hejl* Court reviewed prior Texas cases finding a meander line along the water, and concluded that:

> In all of these Texas cases, the property lines were formed by course and distance calls which contained, or were introduced by, words such as "down the river," "down the creek," "with said river," "with the meanders of the river," or similar phrases. There is no such language in or introduction to the call forming the line in controversy in this case.

*Hejl,* 343 S.W.2d at 228. The *Hejl* Court concluded that the conveyance at issue in that case was a boundary line and not a meander line. Specifically, the Court noted that the last call was a deviation from the former call, which did specifically follow the creek bed, thus showing the intention of the parties to interrupt the meander line at that point and there establish a straight boundary line to the point of beginning. *Hejl,* 343 S.W.2d at 229–30.

In *Ulbricht,* the conveyance described the boundary of land adjacent to an artificially created lake by reference to a contour line that ordinarily formed the upper limit of the water's edge of the lake. The *Ulbricht* Court held that the contour line, and not the shore of the lake, formed the true boundary.

In the present case, the Caldwell Patent's only reference to the shoreline is its initial description of the land as "[i]n the *County of Brazoria* on the *Gulf Coast.*" The remainder of the Patent then provides specific course and distance calls, with the last of these calls, from a post some 30 varas from tide water, running in a straight line more or less parallel to the shoreline to the place of beginning. In order to interpret this last call as a meander line, rather than a boundary line, Bra-

zos points out the initial reference to the property as "on the *Gulf Coast.*" In *Hamilton v. Menifee*, 11 Tex. 718 (1854), our Supreme Court generally defined the term "coast" as follows:

What was and is generally understood by the term coast? The counsel of the appellee has defined the coast or sea-shore to be the contact of the main-land with the main-sea, where no bay intervenes, and with the latter, wherever it exists. This we believe to be substantially correct.

*Id.* at 751. Brazos suggests that the reference to the coast, therefore, specifically places the property along the shoreline of the Gulf of Mexico.

▇▇▇▇ However, the term "Gulf Coast," as it is generally used in Texas, signifies an entire region of the State generally along or near the coast of the Gulf of Mexico, including lands along the inland bays and waterways separated from the Gulf by barrier islands, as well as communities near the coastal waters but not necessarily bordering them. Moreover, even if "Gulf Coast" were given a more restrictive meaning of strictly the property along the seashore, the prepositional phrase "on the *Gulf Coast*," could just as easily modify the immediately preceding *"County of Brazoria"* as the specific property of the Caldwell Patent. In either case, it is clear from the context of the Patent that the use of the term "on the *Gulf Coast*" at the beginning of the grant was meant merely to place the property within a broad geographic region of the State, and not to define the boundaries of the grant. Therefore, we may not use this term to infer a border along the shore or that a specific call parallel to that shore is a meander line rather than a true boundary line.

▇▇▇▇ However, in addition to the general rules of construction that Brazos relied upon to support its interpretation of the Caldwell Patent, Brazos also argued that under the "strip and gore doctrine" it is against public policy to leave title to a long narrow strip or gore of land in a grantor conveying a larger adjoining tract. In *Strayhorn v. Jones*, 157 Tex. 136, 300

S.W.2d 623 (1957), our Supreme Court stated that, "[i]t is well known that separate ownership of long narrow strips of land, distinct from the land adjoining on each side, is a fruitful source of litigation and disputes. To avoid this source of contention, it is presumed that a grantor has no intention of reserving a fee in a narrow strip of land adjoining the land conveyed when it ceases to be of use to him, unless such fee is clearly reserved." *Id.* 300 S.W.2d at 638 (citing *Cantley v. Gulf Production Co.*, 135 Tex. 339, 143 S.W.2d 912, 915 (1940)). In the present case, however, the strip of coastline is not distinct from adjoining land on the seaward side, but adjoins other state-owned beach and submerged lands. Title to land covered by the bays, inlets, and arms of the Gulf of Mexico within tidewater limits is in the State, and such lands constitute public property that is held in trust for the use and benefit of all the people. *Lorino v. Crawford Packing Co.*, 142 Tex. 51, 175 S.W.2d 410, 413 (1943); *City of Corpus Christi v. Davis*, 622 S.W.2d 640, 643 (Tex.App.—Austin 1981, writ ref'd n.r.e.); *Butler v. Sadler*, 399 S.W.2d 411, 415 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.). Thus, the strip and gore doctrine does not apply, and is of no use to Brazos in establishing its title to the shoreline.

As a matter of law, we hold that the last call of the Caldwell Patent is a boundary line, and therefore that the property in question does not include any of the shoreline claimed by Brazos. The State's fourth point of error is sustained.

By its eighth point of error, the State argues that the trial court erred by rendering summary judgment for Brazos that it was entitled to rely on statements made by the State in a prior judicial proceeding, and that the State may not now contest Brazos' claim of ownership to the shoreline.

▇▇▇▇ Brazos contends that the State by its 1973 Petition in Condemnation has made a judicial admission which precludes it from now contending that the disputed lands were not included within the Caldwell Patent. Pleadings in other actions which contain statements inconsistent with the

party's present position are receivable as admissions. *St. Paul Fire & Marine Insurance Co. v. Murphree,* 163 Tex. 534, 357 S.W.2d 744, 747 (1962); *Cameron County v. Velasquez,* 668 S.W.2d 776, 783 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) (on rehearing); *City of College Station v. Seaback,* 594 S.W.2d 772, 777 (Tex. Civ.App.—Waco 1979, writ ref'd n.r.e.). However, admissions of this nature, unlike formal judicial admissions, are not conclusive on the admitter, but are merely some evidence which the admitter may explain, contradict or deny. *Cameron County,* 668 S.W.2d at 783; *Seaback,* 594 S.W.2d at 778.

■ In the present case, we hold that admissions or evidence of this nature was unavailable to contradict the terms of the unambiguous Caldwell Patent, the construction of which is a question of law to be based on the intent of the parties as expressed within the four corners of the instrument. *See Altman,* 712 S.W.2d at 118; *Ulbricht,* 325 S.W.2d at 672.

■ Similarly, however, Brazos also contends that by the State's acceptance of an instrument under which Brazos purported to convey to the State a conservation easement over land including the property in dispute, the State is now equitably estopped from challenging Brazos' title to that property. However, we believe that the present situation falls within the rule that silence or failure to assert title to land, while it is being adversely claimed, conveyed, or occupied, is not of itself sufficient to create an estoppel. *See Simonds v. Stanolind Oil & Gas Co.,* 134 Tex. 332, 114 S.W.2d 226, 235 (1938). The State's action in accepting the conservation easement which included a purported conveyance of an interest in the property now in dispute amounted to nothing more than a silent acquiescence in such purported conveyance, and thus could not have the effect of estopping the State from presently disputing Brazos' title to the property.

We sustain the State's eighth point of error.

By its sixth point of error, the State argues that the trial court erred by rendering summary judgment that accretions to the relevant shoreline belonged to Brazos, because such a finding is contrary to the unambiguous language of the patent. As already discussed in prior points, the Caldwell Patent did not convey shoreline or littoral rights. Therefore, we agree that Brazos acquired no right to accretions along the shoreline. The trial court erred in granting judgment in favor of Brazos for such accretions. The State's sixth point of error is sustained.

The State's remaining points of error are not dispositive and we do not address them. *See* Tex.R.App.P. 90(a).

We REVERSE the judgment of the trial court and REMAND this case for trial.