NUMBER
13-97-380-CV

 

DOUG NORRELL 
v.  ARANSAS COUNTY NAVIGATION
DISTRICT #1

 

     On appeal from the 156th District Court of
Aransas County, Texas.

 

                                   O P I N I O N

 

                   Before Justices Hinojosa,
Yañez, and Rodriguez 

                                   Opinion
by Justice Yañez

 

Appellant/Cross-Appellee,
Douglas Norrell, appeals from a partial summary judgment in favor of
Appellee/Cross-Appellant, Aransas County Navigation District (Athe District@), dismissing Norrell=s counterclaims
against the District for declaratory and injunctive relief, violations of 42
U.S.C. ' 1983, inverse
condemnation, fraud, and breach of contract. 
In three points of error, Norrell claims the trial court erred in
granting summary judgment because genuine issues of material fact exist as to
whether he is a littoral property owner[1]
and because the court erroneously applied the doctrine of collateral estoppel
to determine as a matter of law that Norrell=s property is not littoral.  We reverse and remand in part and affirm in
part. 








In three points of
error, the District cross-appeals the award of attorney=s fees to Norrell,
contending the trial court erred in awarding fees because: (1) Norrell was not
entitled to fees because he was not a prevailing party; (2) the fees were
unsegregated; and (3) the jury=s answers on attorney=s fees were immaterial
because the contract between the parties required such fees to be Afixed by the court.@  We affirm the trial court=s judgment awarding
attorney=s fees to Norrell and
reverse the summary judgment on Norrell=s counterclaims and
remand those claims for trial.

                                                      Background  

This case involves a
dispute over the ownership of a parcel of land that is adjacent to and
appurtenant to Lot B, a .427 acre tract of land owned by Norrell and located on
the Gulf coast in Aransas County, Texas. 
The property in dispute was allegedly created by accretion[2]
along the eastern boundary of Norrell=s property.  








In 1858, the State of
Texas granted to the heirs of Henry Smith, as assignee of Joseph Hond, a patent
(the Hond Patent) to approximately three hundred and twenty acres of land in
Aransas County, Texas.   In 1991, Norrell
acquired title to two tracts of land, both of which are contiguous and adjacent
to the shoreline of Little Bay in the City of Rockport.  This dispute involves the tract known as Lot
B in the Harbor Oaks subdivision.  The
chain of title to Lot B has been traced back and established to the original
Hond Patent transfer.  The southeast
boundary of Lot B is a line located at the identical location of the southeast
boundary of the Hond survey.  The
original Hond Patent transfer included the property extending to the water=s edge, or to the mean
high tide line.  The property in dispute
is a twenty by three-hundred-foot strip of land that lies to the southeast
between the surveyor=s call line on Lot B
and the mean high tide line of Little Bay adjacent to Lot B.[3]  








The District claims
title to this property based on a 1953 transfer of 604.296  acres of submerged lands adjacent to and
along the Aclearly defined
shoreline@ of Aransas Bay.  In late 1991, Norrell constructed a boat ramp
on Lot B for the boat rental and jet ski business he operates on the
property.  As owner of the submerged land
adjacent to Lot B, the District notified Norrell that the boat ramp required
him to enter into a lease agreement with the District.  In early 1992, Norrell and the District
executed a lease agreement, whereby Norrell agreed to lease a twenty by
three-hundred-foot strip of Aland and water@ from the
District.  On various occasions over the
next several years, Norrell had fill material deposited on Lot B in an effort
to raise the lot elevation to the minimum level required for constructing
improvements.  Norrell contends that most
of the fill material was deposited on Lot B, but concedes that occasionally,
some material was deposited on the leased property to fill in Awashouts@ following rains.  In 1995, the District terminated the lease
agreement, claiming that Norrell had breached the agreement by placing fill
material on the leased property and on the District=s submerged land.  Thereafter, Norrell removed the boat ramp
from the leased property.  The District
sued Norrell for breach of the lease agreement and Norrell counterclaimed,
asserting that he, rather than the District, owned the leased property.  Following the trial court=s dismissal of  Norrell=s counterclaims on
summary judgment, the jury found in his favor on the District=s breach of lease
claim and awarded him attorney=s fees.  

                               Norrell=s Appeal from Summary
Judgment

We first address
Norrell=s appeal from partial
summary judgment rendered in favor of the District that the summary judgment
evidence establishes as a matter of law both that: (1) Lot B is not littoral,
and (2) that Fulton v. Frandolig, 63 Tex. 330 (1885), determined that in
the area in which Lot B is located, the Joseph Hond survey is not littoral and
that Norrell is barred by the doctrine of collateral estoppel from
re-litigating that issue.  

 

 

Burden of Proof








Rule 166a provides a
method of summarily terminating a case when it clearly appears that only a
question of law is involved and that there is no genuine fact issue.  Rhône-Poulenc, Inc. v. Kenda Steel, No.
98-0130, 1999 Tex. LEXIS 76 at *11 (Tex. 
July 1, 1999).  The party moving
for summary judgment carries the burden of establishing that no material fact
issue exists and that it is entitled to judgment as a matter of law.  Id.; see Tex. R. Civ. P. 166a(c).  A cross‑defendant who seeks a summary
judgment against a counterclaim has the burden of establishing, as a matter of
law, that at least one element of the counterclaim does not exist.  Nautical Landings Marina, Inc. v. First
Nat. Bank in Port Lavaca, 791 S.W.2d 293, 299 (Tex. App.CCorpus Christi 1990,
writ denied).

                                                Standard
of Review

When reviewing a
summary judgment, we follow these well‑established rules:  (1) in deciding whether there is a disputed
material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true;  and (2)
every reasonable inference must be indulged in favor of the nonmovant and any
doubts must be resolved in favor of the nonmovant.  American Tobacco Co. v. Grinell, 951
S.W.2d 420, 425 (Tex. 1997); Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548‑49 (Tex. 1985).  A
trial court should grant a defendant=s motion for summary
judgment if the defendant disproves at least one essential element of the
plaintiff=s cause of action, or
if the defendant establishes all the elements of an affirmative defense as a
matter of law.  Science Spectrum, Inc.
v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Dickson v. State Farm
Lloyds, 944 S.W.2d 666, 667 (Tex. App.CCorpus Christi 1997,
no writ).  A matter is conclusively
established if ordinary minds cannot differ as to the conclusion to be drawn
from the evidence.   City of Garland
v. Booth, 895 S.W.2d 766, 768 (Tex. App.‑‑Dallas 1995, writ
denied).








 In addition, a petition must give fair and
adequate notice of the facts upon which the pleader bases his claim.  Dickson, 944 S.W.2d at 667 (citing SmithKline
Beecham Corp. v. Doe, 903 S.W.2d 347, 354 (Tex. 1995)).  A defendant need not show that the plaintiff
cannot succeed on any theory conceivable in order to obtain summary judgment,
but is only required to meet the plaintiff's case as pleaded.  Id. 


Norrell asserted
counterclaims against the District for declaratory judgment, injunctive relief,
42 USC ' 1983 violations,
inverse condemnation, fraud, and breach of contract.  Norrell=s counterclaims are
based on contentions that he, rather than the District, owns the leased
property because Lot B is littoral, with a boundary extending to the shoreline,
or Amean high tide line,@ as defined in the
Hond Patent.  The District moved for
summary judgment on the basis that it disproved as a matter of law an essential
element of each of Norrell=s causes of action,
which is that Lot B is littoral.

In his first point of
error, Norrell argues generally that the trial court erred in rendering partial
summary judgment in favor of the District. 
In his second point, he  argues specifically
that the trial court erred in rendering summary judgment because genuine issues
of material fact exist as to whether he is a littoral property owner and
alternatively, the summary judgment evidence proves he is a littoral property
owner as a matter of law.  In support of
its motion for summary judgment, the District offered the following Aevidence:@

(1) Affidavit of
Jerald L. Brundrett, Jr., a licensed engineer and land surveyor; 

(2) Norell=s first amended answer
and counterclaim, stating his land is Lot B of Harbor Oaks subdivision, that it
is out of the Joseph Hond Survey, that the land in controversy is contiguous to
Lot B, and that Norrell=s claim to it is
founded on his claim that Lot B is littoral;

 

(3) Norrell=s oral deposition;








(4) Texas Supreme Court decision in Fulton v.
Frandolig, 63 Tex. 330 (Tex. 1885);

 

(5) Recorded map of
Harbor Oaks subdivision;

(6) Certified copy of
patent to Joseph Hond Survey;

(7) Certified copy of
patent to Terrance Crocoline Survey;

(8) Certified copy of
patent to F. J. Frandolig Survey;

(9) Lease dated
January 1, 1992 from the District, as lessor, to Norrell, as lessee;

(10) Certified copies of papers on file in Fulton
v. Frandolig, including (a) plaintiff=s trial petition; (b)
defendant=s trial answer; (c)
judgment; (d) findings of fact and conclusions of law; (e) mandate from Supreme
Court; and (f) opinion of Supreme Court;

 

(11) the District=s original petition;

(12) Citation served
on Norrell; 

(13) Certified copy of deed dated November 5,
1991 from Mildred Marie Norrell to Douglas Norrell, showing Lot B as property
deeded to Norrell; and 

 

(14) Certified copy of
patent from State of Texas to the District.

The District primarily
relies on the subdivision plat of Harbor Oaks subdivision,  Brundrett=s affidavit, and the supreme court=s opinion in Fulton
v. Frandolig, 63 Tex 330 (1885), as summary judgment evidence supporting
its position that Norrell=s property is not
littoral as a matter of law. 








We begin by examining
the Harbor Oaks subdivision plat and Brundrett=s affidavit. 
Brundrett=s affidavit states
that he has surveyed Lot B and all tracts adjoining it.  It further states that the southeast line of
Lot B is at the identical location as the southeast line of the Hond survey.[4]  The affidavit further states:

Lot B is shown on the recorded plat of Harbor
Oaks Subdivision Unit 1 as a lot of fixed dimensions.  All of its boundary lines are lines with
fixed locations described by course and distances marked on the plat. The plat
does not show the shoreline as a boundary of Lot B.

 

The District argues
that because the Harbor Oaks subdivision plat shows Lot B as a lot of fixed
dimensions with determinable boundaries, Lot B does not, as a matter of law,
have a shoreline boundary.  We
disagree.  A long-standing principle in
determining ownership of land is that we must defer to the grantor=s intent.  John G. & Stella Kenedy Mem=l Found. v. Dewhurst, No. 03-96-00517-CV,
1999 Tex. App. LEXIS 3978, at *4 (Tex. App.CAustin May 27, 1999).  The intent of the original grantor, as
manifested by the original survey, dominates the determination of property
grant boundaries.  Id. (citations
omitted).  The survey made at the time of
the grant controls if it can be found. Id. (citing Fulton, 63
Tex. at 333).  








The established rule
is that the footsteps of the surveyor shall, if possible, be followed in
determining a boundary line.  State v.
Brazos River Harbor Nav. Dist., 831 S.W.2d 539, 542 (Tex. App.CCorpus Christi 1992,
writ denied) (citing Howland v. Hough, 570 S.W.2d 876, 882 (Tex.
1978)).  This Court has previously
recognized, however, the impossibility of following the footsteps of the
surveyor into a river or along the tide line of the seashore.  Id. 
AAs the San Antonio
Court of Appeals noted in Moore v. Ashbrook, 197 S.W.2d 516, [517] (Tex.
Civ. App.‑‑San Antonio 1946, writ ref'd), >[a] surveyor usually
cannot go into a stream to make a corner, so he makes a corner on the bank in
order to identify the place where he stopped‑‑the rule being an
exception to the one which requires following the footsteps of the surveyor.="  Id.

From this corner, the
surveyor may run a meander line, a series of course and distance calls which
follow the river or other natural object or monument as closely as is
practically possible for purposes of calculating the amount of land conveyed.  Brazos River Harbor Nav. Dist., 831
S.W.2d at 542.  When a meander line is
used, however, the natural object or monument (e.g., a river, the seashore, or
an identifiable terrain feature) will control over the specific calls for
course and distance.  Id.  Thus, meander lines of surveys of land
adjacent to or bounding upon a stream are not to be considered as boundaries,
but they are to follow the general course of the stream, which in itself
constitutes the real boundary.  Id.








In the present case,
the call for the southeastern boundary of the Hond Patent (a section of which
is now the southeastern boundary of Lot B) reads, A[b]eginning on the S.
E. corner of a survey made by virtue of Warrant No. 2714.  Thence with the meanders of the Bay S.
522N W. 458 6/10 varas, .
. .@ (emphasis
added).  The call for the Ameander of the bay@ language shows that
the property where Lot B is located bordered tidal waters at the time of the
Hond Patent.[5]  We hold the trial court=s determination that
the Hond Patent is not littoral is inconsistent with the unambiguous language
of the patent itself.  Moreover, in
deposition, Jerry Brundrett, the District=s expert witness and
affiant, testified as follows:

[A]t the time the Navigation patent was issued,
we have photographic documentation that says not only the shoreline was
probably not along the east line of the original Hond [Patent], but was
probably westerly of that line.

 

We hold the trial court erred in determining as a
matter of law that  Lot B is not
littoral.  We sustain Norrell=s first and second
points.  

In his third point,
Norrell contends the trial court improperly applied the doctrine of collateral
estoppel in determining that the issue of whether the Hond Patent was littoral
or non-littoral property was decided in Fulton v. Frandolig.   Collateral estoppel, or issue preclusion,
bars the relitigation of any ultimate issue of fact that was actually litigated
and essential to the judgment in a prior suit. 
Getty Oil Co. v. Insurance Co. of N. A., 845 S.W.2d 794, 801
(Tex. 1992); Housing Auth. of City of Corpus Christi v. Massey, 878
S.W.2d 624, 626 (Tex. App.CCorpus Christi 1994,
no writ).  To invoke the doctrine of
collateral estoppel, a party must show that: 
(1) the facts to be litigated in the second action were fully and fairly
litigated in the first action; (2) those facts were essential to the judgment
in the first action; and (3) the present parties were adversaries in the prior
action.  Massey, 878 S.W.2d at
626.  








At issue in Fulton
v. Frandolig was ownership of certain property known as Athe reef@ and the adjacent
accretion.  Fulton, 63 Tex. at
330-31.  James Fulton, then owner of the
Hond and Crocoline Patents,[6]
claimed ownership of the reef based on his littoral rights and the doctrine of
accretion.  Id. at 330-332.  The reef was located to the south southeast
of Fulton=s property.  Id. at 332. The supreme court
relied on the trial court=s findings of fact,
which recognized that the Hond and Crocoline properties were littoral
properties, in holding that the reef, which had existed at the time the
original survey was completed, was a separate and distinct piece of
property which was not intended to be included in the patents.[7]  Id. at 332-33.  The court noted that at the point where the
boundary line run by the surveyor crossed the reef, the reef was approximately
twenty or thirty feet wide.  Id. at
332.  The court concluded, therefore,
that in making the survey: 

the surveyor in fact ran across the shell reef
according to the call for course and distance. 
Hence according to the lines as actually run upon the ground, this shell
reef, to the south and southeast of where the line crossed it, was not included
in the Smith survey.[8]

 

Fulton, 63 Tex. at 333.

 








The District contends
that in holding that Athe actual survey as
made upon the ground, if it can be found and identified, controls,@ see id., the
supreme court rejected the claim made by Norrell in the present case that Lot B
is littoral.  We disagree.  We conclude that the supreme court=s decision in Fulton
does not establish as a matter of law that the area where Lot B is located is
not littoral.  Accordingly, we hold the
trial court erred in concluding that Fulton fully and fairly litigated
the issue of whether the Hond Patent was littoral and that Norrell=s claims were barred
by the doctrine of collateral estoppel. 
We sustain Norrell=s third point of
error.

                           District=s Appeal of Award of
Attorney=s Fees

We next address the
District=s appeal of the trial
court=s award of attorney=s fees to Norrell.

In its first point,
the District contends the trial court erred in awarding attorney=s fees to Norrell
because he did not recover a judgment on any affirmative claim and was,
therefore, not a prevailing party entitled to attorney=s fees.  Norrell argues the award of attorney=s fees was proper
because he was the prevailing party in the District=s breach of lease
claim and accordingly, was entitled to recover reasonable attorney=s fees under the lease
agreement. 








As a general rule, a
prevailing party is not entitled to recover his attorney's fees from his
adversary.  G. Richard Goins Constr.
Co. v. S. B. McLaughlin Assocs., Inc., 930 S.W.2d 124, 130 (Tex. App.CTyler 1996, writ
denied).   However, parties to a contract
may provide by agreement that the prevailing party is entitled to recover
attorney's fees.  Id. (citing
Weng Enterprises v. Embassy World Travel, 837 S.W.2d 217, 222‑23
(Tex. App.CHouston [1st Dist.]
1992, no writ).  The term
"prevailing party," for the purposes of awarding attorneys' fees,
refers to a party who successfully prosecutes an action or successfully
defends against an action on the main issue.  Emery Air Freight Corp. v. General Transp.
Sys., Inc., 933 S.W.2d 312, 316 (Tex. App.CHouston [14th Dist.] 1996, no writ); Weng
Enter., Inc., 837 S.W.2d at 222‑23; Goins Constr. Co., 930
S.W.2d 124 at 130.

In the present case,
Section 22 of the lease agreement provided as follows:

Attorney=s Fees: In the event
of any judicial proceeding in connection with this lease, the prevailing party
shall be entitled to recover reasonable attorney=s fees from the defeated party, as fixed by the
court.

 

The District lost the
only cause of action asserted against Norrell, breach of the lease
agreement.  Accordingly, Norrell was the
prevailing and successful party in his defense on the main issue of breach of
the agreement and is entitled to attorney's fees under the agreement.  We overrule the District=s first point of
error.








In its second point,
the District contends the trial court erred in awarding attorney=s fees because no
effort was made to segregate the fees expended by  Norrell in prosecuting his claims lost on
summary judgment and his defense of the District=s breach of lease agreement claim.  Norrell contends he segregated his attorney=s fees before trial
and only presented evidence at trial of the reasonable attorney=s fees incurred in
defense of the District=s breach of contract
claim.   He argues the District presented
no evidence that any of the attorney=s fees were not
incurred in defending against the District=s claim.  Moreover, Norrell argues the District waived
the segregation issue by failing to object to Norrell=s attorney=s fees evidence or to
the jury question submitted on attorney=s fees.

If a party fails to
object to a jury question on attorney=s fees for failure to
segregate fees, the objection is waived. 
Tex. R. Civ. P. 274; Green
Int=l, Inc. v. Solis, 951 S.W.2d 384, 389
(Tex. 1997).  Under such circumstances, a trial
court may disregard the jury finding only if it is unsupported by the evidence
or it is immaterial.  Green Int=l, Inc., 951 S.W.2d at
389.  In this case, the District failed
to object to the jury question on attorney=s fees on the issue of
segregation, the jury finding awarding attorney's fees was material, and the
finding was supported by the evidence.[9]  Thus, any error in the trial court's failure
to segregate attorney's fees in the jury question and instructions was waived
and cannot serve as a basis for barring the recovery of attorney's fees.  We overrule the District=s second point. 

In its third point,
the District contends the trial court erred in submitting the question on
attorney=s fees to the jury
because the lease agreement provided such fees to be Afixed by the court.@  Norrell argues the trial court did fix the
award of attorney=s fees.  The District failed to object to submission of
the jury question on attorney=s fees on the basis
that such fees were to be fixed by the court. 
The District thus waived any error. 
Even if error had been preserved, we are unpersuaded that the trial
court failed to comply with the provision that such fees were to be Afixed by the court.@  We overrule the District=s third point.








Accordingly, we
REVERSE the trial court=s summary judgment on
Norrell=s counterclaims and
REMAND for trial on those claims.  We
AFFIRM the remainder of the judgment awarding attorney=s fees to Norrell.

 

 

____________________________________

Linda Reyna Yañez

Justice

 

Publish.

Tex.
R. App. P. 47.3

 

Opinion
delivered and filed this

the
26th day of August, 1999.

 

 











[1]Littoral
property rights are appurtenant to land which borders a lake or sea.  See City of Corpus Christi v. Davis, 622
S.W.2d 640, 646 (Tex. App.CCorpus Christi 1981, writ ref=d
n.r.e.).





[2] Texas
recognizes the doctrine of accretion, under which the owner of riparian land
gains title to land that accretes to his or her property by natural and
imperceptible deposit.  See Ely v.
Briley, 959 S.W.2d 723, 726 (Tex. App.CAustin 1998, no pet.). 





[3] We
cannot determine from the record where the shoreline lies at the present time. 





[4] The
parties apparently do not dispute that the southeast boundary of Lot B is at
the same location as the Hond Survey. Similarly, there is no dispute regarding
the accuracy of the plat referred to by Brundrett, which includes parts of the
Crocoline survey, Joseph Hond survey, Frandolig survey, Navigation District
survey, and Lot B.      





[5] Lot B
and the Hond Patent=s
eastern call lines are virtually identical and are bordered to the east by the
disputed property.  We note that the
District submitted no evidence to suggest that the littoral rights included in
the Hond Patent were somehow segregated or separated from the Hond Patent via
transfer through the chain of title to Norrell. 





[6] The
Crocoline Patent lies north of the Hond Patent. 
The southeast corner of the Crocoline Patent (also the northeast corner
of the Hond Patent) lies on a line, which is also the northwest boundary of the
Frandolig Patent and the southeast boundary of the Hond Patent.





[7] The
court cited the trial court=s findings of fact, which
included the following:

 

That
the lands patented were identified both as to boundaries and the number of
acres by the survey of 1881, and that the land in controversy, surrounded now
as aforesaid by the waters of the bay and containing two hundred and
thirty-nine acres, lies beyond the boundaries of [Fulton=s]
land.

(Emphasis
supplied). 

 

Fulton, 63 Tex. at 331.





[8] The ASmith
survey@
included Fulton=s two
tracts, the Crocoline and Hond Patents.  





[9] Norrell
presented evidence supporting the jury=s findings regarding attorney=s
fees incurred Ain
this case through the preparation and completion of trial.@